**SYMONS v. UNITED STATES.**

No. 11866.

United States Court of Appeals,
Ninth Circuit.

Dec. 14, 1949.
Rehearing Denied Jan. 16, 1950.

616

Morris Lavine, Los Angeles, Cal., for appellant.

James M. Carter, U. S. Atty., Norman W. Neukom, Cameron L. Lillie and Tobias G. Klinger, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and HEALY and BONE, Circuit Judges.

BONE, Circuit Judge.

Appellant, having waived jury trial, was convicted before a United States District Judge of offenses as charged in two counts of an indictment. Count one charged defendant with acquiring (in violation of 26 U.S.C.A. § 2593(a)) marihuana without having paid the transfer tax imposed by 26 U.S.C.A. § 2590(a), he being a transferee required to pay such tax. Count two charged him with concealing (in violation of 19 U.S.C.A. § 1593(b)*) the marihuana knowing it to have been imported into the United States contrary to law.

The Government concedes error as to count two and we agree that the judgment cannot be sustained on that count.

---

* 1948 Revised Criminal Code, 18 U.S.C.A. § 545.

There was no evidence that the marihuana had been imported into this country and that appellant knew this. The judgment and sentence on count two is therefore reversed.

Appellant assigns as error failure of the trial court, upon motion timely made, to suppress certain evidence (the marihuana) and failure to suppress the arrest. He alleges that both the evidence and the arrest resulted from an illegal search and seizure in violation of the Fourth and Fifth Amendments of the Constitution of the United States. Appellant also assigns as error the admission, over objection, of certain statements made to Federal narcotic agents by the defendant prior to his being taken before a commissioner. Finally, appellant contends that the evidence was insufficient to support the verdict.

A brief review of the facts appears necessary to an understanding of the questions involved. From a careful consideration of the testimony (some of which is disputed) we believe that the trial judge was justified in believing, beyond a reasonable doubt, that the evidence established the following facts to be true:

On Friday, December 5, 1947, the proprietress of a motel in Manhattan Beach, California called the local police. At her request they searched one of the motel units and found there particles of marihuana. A Cadillac automobile, which had been used by occupants who had just left the motel unit wherein the marihuana was found, was traced through its license number to a street address in El Segundo, California where appellant lived. This automobile was owned by appellant. Three Manhattan Beach police officers (in uniform) and a detective from the Los Angeles Police Department Narcotics Division (one Sgt. Barr, who had been called down from Los Angeles) proceeded to the El Segundo address arriving there at about 12:30 or 1:00 o'clock a. m. on Saturday, December 6, 1947. At the time they were following this marihuana trail they did not have a search warrant or warrant of arrest.

The officers knocked on appellant's door and during a short conversation with the occupants identified themselves as police officers and demanded entrance. Upon the occupants' refusal to open the door, and after hearing a "scurrying around" inside, Sgt. Barr threw a flower pot through a window by which means he and the other officers were able to unlock the door. They then entered the house. Appellant and his brother were there apprehended and handcuffed. The officers then searched the house and in the attic found a shopping bag which contained several "Prince Albert" tins filled with bulk marihuana and 213 marihuana cigarettes. Appellant and his brother were questioned by the local officers but denied any knowledge of the marihuana. Appellant at that time requested that he be allowed to call his lawyer but the request was refused.

Thereafter and at about 2:00 a. m. these local officers decided to call in the Federal agents here concerned. Sgt. Barr telephoned to the Federal Building in Los Angeles and obtained the residence phone number of one William Kraig, a Federal narcotics agent whom he knew, after which he called Kraig at his residence. Kraig (and Heine, another Federal agent) arrived at appellant's house between 3:00 and 4:00 a. m. on Saturday. Prior to their arrival, the local officers had dumped on the floor the contents of the shopping bag and two of the officers had "initialed" (for identification purposes) each package or aggregate of marihuana included in the tins and bunch of cigarettes found in the shopping bag.

Upon the arrival of the two Federal agents, Sgt. Barr handed over to Kraig the marked (initialed) packages or parcels of the marihuana advising Kraig that these had already been initialed for identification by the local officers. Kraig then suggested that the remaining two local officers also add their initials to the previously marked packages since these two officers had witnessed the seizure of the marihuana. This was done.

After the occurrences above noted, Kraig apparently then "took charge." He questioned appellant and his two brothers briefly (another brother had arrived at the house in the meantime) but without success. About 5:00 a. m. appellant and his two

brothers were taken to the Manhattan Beach Police Station and were there questioned intermittently until about 7:00 a. m. at which time they were taken by Kraig to his offices in the Federal Building in Los Angeles. They arrived there about 8:00 a. m. of Saturday, December 6, 1947. After about two minutes interrogation, during which time Kraig informed appellant that his brothers were going to be released without charge, appellant admitted to Kraig (in the presence of Heine) that the marihuana was his.

Kraig thereafter left the building for the purpose of taking the two brothers back to their home and Heine then had a conversation with appellant in which appellant also admitted to Heine that the marihuana here involved belonged to appellant; also that three days prior to his arrest, appellant had purchased two pounds of bulk marihuana from a Mexican called Chungo.

Thereupon appellant was booked in jail for violation of the Internal Revenue Act.

### Motion to Suppress the Evidence.

In light of the facts above narrated which we think were clearly established in the evidence, we need not consider whether the search and seizure of the marihuana by the municipal police was legal under the laws of California. The trial court found: "that there was no cooperation between the federal officers and the [local] officers * * * until after the defendant had been placed under arrest and until after all of the marihuana had been found and after that was completed. There is no evidence that the federal officers knew anything about the connection of these defendants with this offense until they were advised by the state officers. * * * As I see it, everything was accomplished without any aid or assistance or cooperation from the federal officials until they were advised of an offense. Then they went to

this home and took custody of the defendant and also of the exhibits that have been introduced in this case."

The undisputed evidence fully sustains these findings. We think the facts of this case squarely meet the test recently announced by the Supreme Court in Lustig v. United States, 338 U.S. 74, 78-79, 69 S.Ct. 1372, 1374, "It is not a search by a federal official if evidence secured by state authorities is turned over to the federal authorities on a silver platter." Here the federal officials did not instigate the search; they did not join it while it was in progress, and they did not participate in the search.

■ The denial of appellant's motion to suppress the evidence and the subsequent admission of the marihuana as evidence was proper and the denial did not violate appellant's rights under the Fourth and Fifth Amendments.[1]

Appellant contends that the local police were acting as "agents" for the Federal Government but the evidence wholly fails to support this allegation and the court so found. These state officers were fully aware that possession of marihuana constitutes an offense against the laws of the State of California amounting to a felony.[2] For us to say that under the circumstances here shown the federal officers had no lawful right to accept this marihuana from the state officers and that by accepting it they somehow violated the "constitutional rights" of a willful law violator, would delight those who profess to see nothing but evil and sinister design in efforts of law enforcing agencies to protect organized society against the criminal activities of men engaged in a vicious and degrading traffic. As respects this phase of the case the record provides no indication or evidence whatever that the local police had decided (to employ their vernacular) to "take it federal" until after the arrest was made by

1. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159; Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; Feldman v. United States,

322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408, 154 A.L.R. 982; Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, supra. Lotto v. U. S., 8 Cir., 157 F.2d 623, 625; Losieau v. U. S., 8 Cir., 177 F.2d 919, 923.

2. California Health and Safety Code, §§ 11531, 11712.

them, and after the completion of their search and seizure and careful marking of the seized marihuana, for identification.

### Motion to Suppress the Arrest.

Here again we suggest that it is unnecessary to decide whether the arrest of the appellant by the local police was lawful. Certainly appellant's subsequent arrest by the federal agents, even though made without a warrant, was lawful. The powers of special agents of the Bureau of Narcotics to arrest without warrants have not been clearly defined or limited by statute. See United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210, which appears to lay down the rule that the validity of an arrest without a warrant depends, (in the absence of an applicable federal statute) upon the law of a state in which the arrest takes place. The California law of arrest does not differ essentially from the usual rule derived from the common law.[3]

It is well settled that an officer may arrest without warrant one believed by him, upon reasonable cause, to have committed a felony.[4] Federal agents Kraig and Heine knew that the marihuana had been found hidden in appellant's house. This fact certainly established reasonable cause for them to believe that he was guilty of the crime charged in the indictment. Whether the local police had reasonable cause to make the original arrest is immaterial. The fact that they were outside the jurisdiction of their precinct is immaterial. We do not believe that it could be seriously asserted that if a responsible private person, with or without reasonable cause, made an arrest, discovered absolute evidence of a crime, *and then* turned the criminal and the evidence over to the proper public officer, *the subsequent arrest* by that officer would be unlawful. The arrest made by the federal agents was lawful and the "motion to suppress the arrest" was properly denied.

### Admissibility of the Confessions.

Involuntary confessions obtained by duress or threats or undue psychological pressures, and voluntary confessions obtained after the detention has become illegal, are equally inadmissible in the fed-

---

3. California Penal Code, § 836. "Arrests by peace-officers: A peace-officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person: 1. For a public offense committed or attempted in his presence. 2. When a person arrested has committed a felony, although not in his presence. 3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it. 4. On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested. 5. At night, when there is reasonable cause to believe that he has committed a felony.
§ 837. "Arrest by private persons: A private person may arrest another: 1. For a public offense committed or attempted in his presence. 2. When the person arrested has committed a felony, although not in his presence. 3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it."

4. Trupiano v. United States, 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Gibson v. United States, 80 U.S.App.D.C. 81, 149 F.2d 381, 384, certiorari denied sub. nom. O'Kelley v. United States, 326 U.S. 724, 66 S.Ct. 29, 90 L.Ed. 429; United States v. Heitner, 2 Cir., 149 F.2d 105, certiorari denied sub nom., Cryne v. United States, 326 U.S. 727, 66 S.Ct. 33, 90 L.Ed. 432, rehearing denied 326 U.S. 809, 66 S.Ct. 164, 90 L.Ed. 494. In the Heitner case the court, through Judge L. Hand, 149 F.2d stated at page 106, "It is well settled that an arrest may be made upon hearsay evidence; [citing cases] and indeed, the 'reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties." And see Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, "Probable cause 'is a reasonable ground for belief of guilt'", citing many cases and authorities.

5. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170.

eral courts.[5] The statements which appellant contends were erroneously admitted were those made by him on the morning of the arrest to agents Kraig and Heine in which he admitted ownership of the marihuana. It is asserted by appellant that these confessions or admissions of ownership were the result of a "fear" then entertained by appellant. He claims that this fear was generated by the fact that his home was broken into in the middle of the night, that he was struck and mistreated by the officers, that he was questioned continuously for several hours, that the federal agents threatened to investigate his sick mother and to jeopardize the naval commission of his brother. The testimony of the officers and agents was that appellant was not struck or mistreated, that no threats were made against appellant or his brother or mother, and that the questioning was not continuous but intermittent and for brief periods. It is evident, from the record, that the trial judge rejected appellant's testimony as to all these matters.

It is the duty of the trial court and not this court to weigh such conflicts in the testimony and to determine the credibility and truthfulness of the witnesses. At the conclusion of the case the trial judge commented on appellant's claim that the officers had struck him. The judge said: "The court does not believe the testimony of the defendant that he was struck by a gun or by a fist or an open hand * * * there seems to be no justification at all for such testimony * * * unless it was an attempt to bring his case within the McNabb case where the defendants there were improperly treated."

The claim, based on a "fear" of the character revealed in the evidence, is too tenuous to justify a reversal in this case. We agree with the trial judge in his statement, "I have never known of an arrest or heard of one where a person arrested was not in fear and greatly excited and disturbed when an officer of the law placed a defendant under arrest." We think that this kind of "fear" is a perfectly normal reaction accompanying practically every arrest.

An interesting and very revealing sidelight is thrown upon the facts in this case by certain actions of appellant occurring *after* the filing of the indictment therein. These incidents serve to confirm and corroborate not only the truth but also the voluntary nature of the aforementioned confessions. More than a month after the arrest and upon two occasions appellant voluntarily returned to the office of the narcotic agents in Los Angeles. Kraig and Heine were present on these occasions. On the first of these visits appellant volunteered the statement to Kraig that he had purchased the marihuana seized in this case from a man known as Chungo who lived in Los Angeles. He also offered to assist the Narcotics Bureau in apprehending Chungo. Upon the second visit to the office further conversation occurred relative to Chungo. There is no contention that this latter confession was inadmissible or involuntary.

We think that the trial court was fully justified in concluding that *all* of appellant's aforesaid admissions of ownership were voluntary and were not the product of *any* form of coercion proscribed by law.

The only question properly before this court with regard to appellant's confessions made on the morning of his arrest is whether they should have been excluded (even though voluntary) *because* of the contention that they were obtained while appellant was being illegally detained. If these confessions were made *before* any detention became "illegal," a subsequent "illegal detention" would not render them inadmissible, under the rule of United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140.

Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., requires any person making an arrest without a warrant to take the arrested person without unnecessary delay before the nearest available commissioner. We are not aware of any rule or decision which requires a commissioner to make himself available at all hours of the night for the purpose of hearing evidence against a person arrested.

by federal officers without a warrant. We do not construe the words "without unnecessary delay" to require that the arrested person be taken before a commissioner except during his regular office hours.[6] Appellant concedes in his brief that the commissioner was not available in his office before about 8:30 a. m. of Saturday, December 6, 1947. The evidence would indicate that the aforesaid confessions of ownership were made *before* that time. This record also convinces us that the said confessions of ownership were voluntary and free from any aspect of coercion which should or would vitiate them. In light of this situation we hold that the confessions were made without coercion and while the detention was yet reasonable and lawful; that the fact that appellant was not taken before a commissioner until Monday, December 8, 1947 does not require the rejection of such a voluntary confession made shortly after arrest. Any other view of the law would actually call for suppression and rejection of a free and wholly voluntary confession of guilt which a guilty person, while under arrest, honestly desired to make to the arresting officers, even though such a voluntary confession was made within one minute after the arrest and prior to any interrogation by the arresting officer or officers. See United States v. Mitchell, supra. Admission of the confessions was proper.

### Sufficiency of the Evidence.

■ The essential elements of the offense charged in count one of the indictment are: (1) That the defendant is a transferee (2) required to pay the transfer tax. (3) That he obtained marihuana (4) without having paid the tax.

In its proof the government introduced the confessions referred to above, including the confessions made by appellant more than a month subsequent to the filing of the indictment herein. In these confessions appellant freely admitted to the federal agents not only that the marihuana was his but also that he had *purchased* it from an-

other person. The fact that the marihuana was found in his home substantiates these confessions.

§ 2590 of Title 26 requires all transferees, except those particularly exempted under § 2591(b), to pay the tax. § 2597 places upon the defendant the burden of proof of showing any exemption. Appellant offered no proof of any kind that he was a person, or one of a class of persons, exempted by § 2591(b). Therefore, upon proof that appellant was a transferee (as an admitted purchaser thereof from Chungo) there arose a presumption (under § 2597) that he *was a* transferee required to pay the tax.

Appellant asserts that there was no proof that he had not paid the tax.

■ 26 U.S.C.A. § 2593(a) supplies a presumption of guilt if there is " * * * proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the collector, to produce the order form * * *." The record shows that a notice and demand was served on appellant a few minutes before the trial. It is open to doubt whether such service met the statutory requirement of reasonableness, but in any event, the government offered no proof that appellant failed, after service of this demand, to produce the order form. We think that for that reason the presumption of § 2593(a) did not arise.

■ Under the circumstances of this case, we find it unnecessary to decide whether the presumption of § 2597 (cf. United States v. Williams, 2 Cir., 161 F.2d 835, 837, supplied proof of nonpayment of the tax, for in our opinion, the evidence was more than sufficient to justify the conviction under count one. Even without the aid of a statutory presumption, the government need not adduce positive evidence to support a negative averment (in the indictment) the truth of which is fairly, though inferentially, indicated by established circumstances, and which if untrue could be readily disproved by the defendant,

6. In Janus v. United States, 9 Cir., 38 F. 2d 431, 437, this court found that a detention during the night and until the magistrate opened his office the following morning was reasonable.

Rossi v. United States, 289 U.S. 89, 53 S.Ct. 532, 77 L.Ed. 1051, and cases there cited.

 We have here appellant's original denial of any knowledge concerning the marihuana found hidden in his attic, his subsequent admissions that he had purchased the marihuana three days before its seizure, and his offer, when confronted with these facts, to assist the agents in apprehending the seller. To the foregoing may be added the fact that the capture included bulk marihuana contained in twelve Prince Albert tins and 213 marihuana cigarettes. This evidence is entirely inconsistent with a contention that he had paid the tax, and although circumstantial, was of such compelling significance as to create an inescapable inference of guilt.

The evidence before the court clearly justified its conclusion that the entire transaction was illegal and that appellant had not paid the transfer tax. We think that the judgment and sentence on count one finds overwhelming support in the record and should be affirmed.

Affirmed.