## UNITED STATES v. GULLER et al.

### Cr. No. 15905.

United States District Court
E. D. Pennsylvania.
Nov. 30, 1951.

Gerald A. Gleeson, U. S. Atty., Harry Wolov, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

William Charles Brown, Philadelphia, Pa., for defendant Abraham Guller.

Jacob Kossman, Philadelphia, Pa., for defendant Harry Riccobene.

FOLLMER, District Judge.

The above entitled cause, an indictment charging conspiracy to purchase, sell, etc., a derivative and preparation of opium, 18 U.S.C. § 371 based on 26 U.S.C. § 2553(a) and § 2554(a), is before the Court upon motions of defendant, Riccobene, (1) to dismiss the indictment and (2) for return of seized property and suppression of evidence.

The Court directed that testimony be taken to ascertain the basis for defendant's allegations on the said motions. At that time defendant called as his witnesses Joseph M. Bransky, Narcotic Agent of the United States Government, and Michael Astrin, an informer. A summary of the evidence produced at this hearing developed the following facts:

For a matter of months Abraham Guller had been known by the authorities to be engaged in the illegal traffic of narcotic drugs and counterfeit money through the South. At the instance of the Narcotic Agent, Astrin, the informer, contacted the defendant, Guller, in Baltimore in an effort to purchase narcotics. During the course of the investigation of Guller in Baltimore it developed that he was making frequent telephone calls to Philadelphia, Market 7–9192. This telephone was registered in the name of Fred Rogatto, 802 South Eighth Street. From an investigation of this address by the Agent, Riccobene was identified as an habitue there for number writing and other activities and was known by the Agent to be at that address on the afternoon of July 9, 1949. On that date, which incidentally was the day of Guller's arrest, Astrin, the informer, heard Guller call Market 7–9192 and ask for "Little Harry" or "Humpy Harry". Astrin knew these names to refer to Riccobene. Guller told Astrin that Riccobene had told Guller to come down; also, to get $150 as a down payment before delivery of narcotic drugs would be made. On another occasion Guller had told Astrin of having gone to Riccobene. An investigation of the files of the Philadelphia Police Department disclosed that Riccobene had been convicted of a violation of the narcotic laws about twenty years prior thereto. On the night (Saturday) of Guller's arrest one Pennisi, also arrested at the same time as a material witness, advised the Agent that Riccobene had furnished him, Pennisi, the automobile in which Pennisi transported Guller to the Benjamin Franklin Hotel where he was to meet Astrin; that all of this information was known by Bransky on the Saturday night preceding the arrest of Riccobene on the Sunday morning following.

Bransky further testified that he had rented two rooms at the Benjamin Franklin Hotel, registering one in Astrin's name. An extension was placed on the telephone in the one room to that in the second. However, nothing was obtained from this source.

Sometime during the evening Pennisi and one of the agents engaged in some altercation, which soon terminated, and no complaint was filed by either of the contending parties.

The car in which Pennisi drove Guller to the Benjamin Franklin Hotel was seized by the agents, together with the car keys which were on a ring and on which were attached additional keys and which after the arrest proved to be the personal keys of Riccobene.

Defendant strenuously contends that his arrest was invalid; that it was made without probable cause, and that whatever information was obtained in connection therewith was acquired illegally.

█ In United States v. Coplon, 2 Cir., 185 F.2d 629, 633, Judge Learned Hand posed the legal principle here involved with its historic background as follows: " * * * In the absence of some controlling federal law the validity of an arrest for a federal crime depends upon whether an arrest for a state crime would have been valid under the state law, if made in the same circumstances. Whatever the doubts which might have existed as to this before 1948, they were laid in that year.[1] At common law a private person, as distinct from a peace officer, had the power to arrest without warrant for a felony, committed in his presence, and for one, actually committed in the past, if he had reasonable ground to suppose that it had been committed by the person whom he arrested. A 'constable' or other 'conservator of the peace' had all the powers of arrest without warrant of a private person, and in addition the power to arrest for felony, although no felony had actually been committed, if he had reasonable ground to suppose that the person arrested had committed the felony. That was the only distinction between their powers and those of a private person. * * *"

The law of Pennsylvania is in substantial accord therewith.[2]

I find nothing to indicate that any evidence against this defendant was secured as the result of an illegal wire tapping, or as a result of unlawful force and violence against any person. Both of the hotel rooms were paid for by the Agent who had one registered in his own name, the other in the name of the informer. An extension was placed by the Agent on the telephone in the one room to that in the other and conversations were listened to over the extension. However, the conversations proved to be of no value and in any event did not include any conversation with Riccobene.

█ Therefore, aside from the fact that nothing of substance was produced from this listening in episode, it is by its nature completely innocuous because (1) the act prohibiting the interception of communication by wire or radio is intended to protect only the sender of the message against the divulgence thereof. Riccobene was not a party to the alleged communications. Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312. (2) The interception forbidden by Section 605 of the Communications Act of 1934, 47 U.S.C.A § 605, must be by some mechanical interpositions in the transmitting apparatus itself, that is the interjection of an independent receiving device between the lips of the sender and the ear of the receiver. Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691, 694.

In Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322, the Supreme Court held that the use by federal agents of a detectaphone, whereby conversations in the office of a defendant were overheard through contact on the wall of an adjoining room, did not violate the Fourth Amendment, and evidence thus obtained was admissible in a federal court.

█ In this case there certainly was no interjection of an independent receiving device. Even had the conversation been with this defendant, it would have been admissible against him, as the agency used in making it audible was not in violation of the Communications Act.

█ I find absolutely no evidence of the use of any unlawful force or violence

---

1. Citing United States v. Di Re, 332 U.S. 581, 589, 590, 68 S.Ct. 222, 92 L.Ed. 210; Johnson v. United States, 333 U.S. 10, 15, Note 5, 68 S.Ct. 367, 92 L.Ed. 436.

2. Commonwealth ex rel. Spencer v. Ashe, 364 Pa. 442, 71 A.2d 799, citing a number of cases including the leading case of Wakely v. Hart, 6 Bin., Pa., 316, 318.

against any person connected with this case. Finally, I am of the opinion the Agent had probable cause to make the arrest of Riccobene at the time and place in which it was made.

It was not until Saturday night, July 9, 1949, that with the information received from Astrin, the informer, and Pennisi, and the final piecing together of a lot of earlier incidents, none of which standing alone would have been sufficient, was the Agent armed with the probable cause to make the arrest. In my opinion, on the showing then available a warrant should and would have been issued. A Commissioner was not available Saturday night or all day Sunday. Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C., requires any person making an arrest without a warrant to take the arrested person without unnecessary delay before the nearest available Commissioner. The words "without unnecessary delay" should not be construed to require that the arrested person be taken before a Commissioner except during his regular office hours.[3] It certainly is well settled that an arrest may be made upon hearsay evidence and that the reasonable cause necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial.[4]

I am not unmindful of the word of caution of the Supreme Court in Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436, against by-passing the constitutional requirement of a magistrate's warrant. In that case, however, the arrest involved one person on the suspicious evidence of opium fumes emanating from a hotel room. Here, I feel in view of the fact that at the time of the arrest on Saturday night two of the accomplices had been arrested and the car furnished by the defendant and used in the enterprise had been seized and that all had taken place in a large urban community, the agent would have been justified in fearing the possibility of escape.[5] How-ever, we are not here circumscribed by the limitations of the Act of 1934, 18 U.S. C. § 3052, which authorizes Agents of the Federal Bureau of Investigation to make arrests without warrant for felonies cognizable under the laws of the United States in such cases where the person making the arrest has reasonable grounds to believe the person so arrested is guilty of such felony, and where there is a likelihood of the person escaping before a warrant can be obtained for his arrest.

In United States v. Coplon, supra, Judge Hand points out that at common law a private person, as distinct from a peace officer, had the power to arrest without warrant for a felony, committed in his presence; and for one, actually committed in the past, if he had reasonable ground to suppose that it had been committed by the person whom he arrested; that since the Agents of the Bureau are private persons it would seem under United States v. Di Re, supra, that in 1934 they already had the same powers of arrest as private persons in any state where they acted; that it might be argued that the Act of 1934 was cumulative, i.e., as giving the agents added powers of arrest. Judge Hand concludes, however, that the Act was intended to be a constitutive, not a cumulative, grant of any powers of arrest without warrant which the agents were to have. This additional requirement of the likelihood of escape is peculiar to the grant of power by Congress to the Bureau, which, as Judge Hand indicates, has always been grudgingly given. As above indicated, this is not a Bureau arrest, consequently, the element of escape, which if present is always most convincing, is certainly here not an absolute prerequisite.

From all of the facts and circumstances of this case I am firmly of the opinion that there was here ample probable cause for the action taken by this Agent. Accordingly, defendant's motions to dismiss the indictment as to Harry Riccobene and for the return of seized property and suppression of evidence will be denied.

3. Symons v. United States, 9 Cir., 178 F.2d 615, 620.

4. United States v. Heitner, 2 Cir., 149 F.2d 105, 106.

5. United States v. Bianco, 3 Cir., 189 F.2d 716.