# Commonwealth v. Reichert et al.

*Daniel E. Teeter* and *Swope, Brown & Swope*, for plaintiff.

*J. Francis Yake, Jr.*, for defendants.

SHEELY, P. J., July 23, 1955.—This matter is before the court upon exceptions filed by defendants to the bill of costs as taxed by the clerk of courts. Proper disposition of the exceptions requires an understanding of the background of the situation.

On September 8, 1954, defendant, Reichert, laid an information charging one William J. Farrell with assault and battery and unlawfully pointing firearms. About 37 days later Farrell laid an information against Reichert and March charging them with (a) assault, (b) conspiracy to commit assault and battery with intent to ravish and (c) assault and battery with intent to ravish. The cases were tried separately.

The Farrell case resulted in a mistrial due to the inability of the jury to agree upon a verdict, but he later entered a plea of nolo contendere to the charges.

In the Reichert and March case the grand jury ignored the charge of assault and battery with intent to ravish, the court directed a verdict of not guilty on the charge of conspiracy and the jury returned a verdict of not guilty on the charge of simple assault but directed defendants to pay the costs.

At his trial Farrell admitted that he had pointed a gun in the direction of Reichert and March and that he had struck Reichert. His defense was that he was attempting to arrest Reichert and March for the commission of a felony and therefore was justified in his actions. The charges which he brought against Reichert and March were based on the same facts which he contended gave him the right to make an arrest without a warrant. There is some basis for the argument that these charges were brought to bolster Farrell's defense to the charge against him. Although Farrell was a police officer in a neighboring city, he had no authority as a police officer in Adams County and, therefore, did not have the legal right of a police officer to make an arrest without a warrant on the suspicion of a felony having been committed. To justify the attempted arrest it was necessary for him, as for any other private citizen, to show that a felony had actually been committed: Brooks v. Commonwealth, 61 Pa. 352, 359 (1869) ; United States v. Guller et al., 101 F. Supp. 176, 178 (1951).

The testimony at the Reichert and March trial tended to show that on the night in question Farrell's young daughter and daughter-in-law walked from their cottage at Mummert's Grove to East Berlin. As they were returning to the cottage Reichert and March, in an automobile, attempted to "pick them up". The girls indicated that they were not interested but the boys persisted. They drove back and forth on the road and each time they would pass the girls they would renew their attempts to have them go along.

According to the girls, after they had turned from the main road into a side road, the boys operated their automobile at a high rate of speed directly at them, forcing them to jump out of the way to avoid being struck. This was the basis for the charge of simple assault. All of this frightened the girls and they finally ran through the fields, hiding in the woods when the car would pass and running when the car was not in sight. At one point the girls testified that the car stopped and that a searchlight was played across the field in an effort to locate the girls.

When the girls arrived at the camp they were hysterical and their bodies were dirty and scratched from briers. They were unable to give a coherent account of what happened but from their appearance Farrell assumed that they had been raped or that an attempt had been made to rape them. Having been furnished with the license number of the car, he, together with his son, set out to arrest the culprits.

Actually, of course, the boys had at no time committed an assault and battery upon the girls and there was no evidence that they intended to commit the crime of rape.

"As rape is the carnal knowledge of a woman forcibly and against her will, any attempt to commit rape requires force and absence of consent; consequently it amounts to an assault and battery with intent to commit rape": Commonwealth v. Moon, 151 Pa. Superior Ct. 555, 561 (1943). Therefore, no felony was committed. It was undoubtedly for this reason that the grand jury ignored the charge of assault and battery with intent to ravish. The charge of conspiracy to commit an assault and battery with intent to ravish actually was a charge of conspiracy to commit the crime of rape, and since there was no evidence of any intent to commit rape the court directed a verdict of not guilty on that charge. Since no battery

was actually committed there remained to be submitted to the jury only the charge of simple assault based on the testimony that the boys deliberately operated their automobile at the girls. "Assault is an intentional attempt to force to do an injury to the person of another . . .": Cohen et al. v. Lit Brothers, 166 Pa. Superior Ct. 206, 209 (1950).

The jury returned a verdict of not guilty on this charge but, apparently feeling that the actions of the boys were reprehensible, directed them to pay the costs of prosecution. They were fully justified in this conclusion. The sole question before us is the amount of costs which should be paid.

The exceptions to the bill of costs relate specifically to fees and mileage for certain witnesses who were in attendance, under subpoena, but were not called or, being called, were not permitted to testify on the ground that their testimony would have been irrelevant.

At the outset, a distinction must be made between costs allowed in a civil case and costs allowed in a criminal case. In a civil case the action is prosecuted or defended by private parties while in a criminal case the prosecution is conducted by the district attorney who is a public officer charged with that responsibility. By section 1 of the Act of May 3, 1850, P. L. 654, 16 PS §3431, the district attorney is charged with the responsibility to "conduct in court all criminal and other prosecutions in the name of the commonwealth . . . which arise in the county for which he is elected, . . ." This responsibility necessarily includes the determination of what cases shall be prosecuted and what witnesses are necessary to conduct the prosecution.

The legislature has recognized the district attorney's responsibility in connection with the calling of witnesses. By section 1 of the Act of May 19, 1887,

P. L. 138, 19 PS §1225, it is provided that the costs of prosecution in every case of misdemeanor shall, on the termination of the prosecution by bill of indictment being ignored by the grand jury, or by a verdict of a traverse jury and sentence of the court thereon, be immediately chargeable to and paid by the proper county, "Provided, That the county shall be liable only for the costs of such witnesses as the district attorney shall certify were subpoenaed by his order, and were in attendance and necessary to the trial of the case."

Since it would be unjust to deprive witnesses of their costs where they were legally subpoenaed in the name of the Commonwealth, it has been held that the clerk of courts shall give a subpoena on behalf of the Commonwealth only on the order of the district attorney who should see to it that only the names of necessary and proper witnesses are placed thereon: Commonwealth v. Shell, 1 Pa. C. C. 41 (1885). Where there is private counsel in criminal cases (private counsel are permitted only ex gratia), they should not subpoena witnesses without the consent of the district attorney. Where private counsel subpoenas witnesses in addition to those subpoenaed by the district attorney, and without his consent, the cost of such witnesses will not be allowed: Commonwealth v. Eichenlaub, 1 Pa. C. C. 642 (1886).

Considerable latitude must be accorded to the district attorney in performing this duty. He would be justly subject to criticism if a prosecution should fail because of his failure to call witnesses whose testimony would be material to the issue. On the other hand, as a public official, he is interested in keeping costs at a minimum and should not subpoena more witnesses than are reasonably necessary to support the case. This requires the exercise of legal discretion on his part as it is never possible prior to trial to determine exactly what course the proceedings will

take and exactly what witnesses will be necessary. This presents a particularly difficult situation where there are cross prosecutions, where defendant in one case is the prosecutor in another growing out of the same transaction. In all cases, of course, the district attorney's duty is to see that the cases are fairly and properly presented, and he ordinarily conducts a full investigation of the facts on his own part. But where there are cross prosecutions, brought by private prosecutors, he is confronted with the duty of presenting cases against each party arising from the same set of facts and he cannot insist that each defendant make a full disclosure of his case prior to trial as this might tend to force a defendant to give evidence against himself. Consequently, in these cases, he must rely to a large extent upon the statements of the parties, particularly where reputable private counsel is involved, as to what witnesses will be required.

But, while public policy requires that the district attorney must have a broad discretion in determining what witnesses shall be subpoenaed, there must be a limit beyond which even he may not go. Thus, where an incident occurred in the presence of a public assembly, the Commonwealth should not subpoena all of the bystanders as witnesses but only such as could clearly and fully prove the case. To call more than that would "savor of oppression": Commonwealth v. Worrall, 1 Pa. C. C. 42 (1879). In the absence of bad faith, the exercise of discretion by the district attorney in determining what witnesses shall be subpoenaed cannot be questioned unless so many were called that the action could be called oppressive.

In the present case there was a private prosecutor who subpoenaed the witnesses with the consent of the district attorney. In such cases the inquiry into the necessity for the calling of witnesses must be broader than where they are called on the district attorney's

own initiative. We must consider the question whether there was any basis for calling the witnesses objected to and whether so many were called as to make the action oppressive.

The girls testified that they had hidden in the yard of a house occupied by Mrs. Ira Eisenhart while the boys were driving up and down the road, and that the house was dark. Mrs. Eisenhart would have testified that her house was dark at the time in question and would have testified to her own whereabouts. There was no abuse of discretion in subpoenaing her.

George Hockensmith, Jr., and Leroy Moore were called to corroborate the testimony of Elvin Bream and George Hockensmith, Sr., who heard the girls call for help and who followed the boys' automobile and got the license number. These witnesses also saw the automobile parked along the road for several minutes with the spotlight playing over the field. This testimony would have provided identification of the car, refuted testimony of the boys that they did not stop along the road and that their spotlight caught the girls purely by chance, and it described the manner in which the boys left the scene which could have been construed as flight on their part. There was no abuse of discretion in calling these witnesses.

The principal controversy relates to the witnesses: Mrs. George Hockensmith, Sr., Mrs. George Hockensmith, Jr., Mrs. Catherine Moore, Donald Moore, William J. Farrell, Mrs. Goldie Farrell, Kenneth Farrell, Curtis D. Britcher, Cletus Mummert, Mrs. Blanche Mummert, Arthur Huntsberger, Mrs. Lela Huntsberger, and Mrs. Sarah Myers, all of whom were prepared to testify as to the condition of one or both of the girls when they finally arrived at the cottage. At that time they were hysterical, their clothes were disheveled and torn and they were muddy from head to foot and were bleeding about their legs. Had these

conditions been caused directly by acts of defendants this testimony would have been extremely important. However, the conditions were caused by the girls running through the fields and brush in an effort to get away from the boys and did not indicate the nature or extent of any attack upon them but merely indicated the extent of their fear. Since no attack was actually made upon the girls, the testimony would have created a false impression in the minds of the jury and would have had little or no probative value on the charges of simple assault by automobile or of conspiracy. Assuming that the testimony might have been relevant in the event that defendants attempted to minimize their acts or to contend that nothing happened, we have a situation where 13 witnesses, three of whom were members of the family, were called to testify to a minor fact which would not directly tend to prove the facts at issue. This brings the situation directly within the rule of Commonwealth v. Worrall, 1 Pa. C. C. 42 (1879), supra, where 30 witnesses were called to prove an assault and battery and the court required defendant to pay for only eight of the witnesses, except that in that case the witnesses testified to the main facts in issue.

We think that three witnesses would have been ample to establish the facts alleged, if they had been relevant. Calling 13 witnesses under these circumstances would savor of oppression. The allowance to the witnesses vary according to the mileage, but we think the ends of justice will be met by eliminating the sum of $90 from the amount required to be paid by defendants, reducing the costs to them to $206.35.

And now, July 23, 1955, the exceptions to the bill of costs in the above matter are sustained to the extent that it is ordered that the costs payable by defendants be reduced from the sum of $296.35 to the sum of $206.35 and that the difference of $90 be refunded to defendants.