## UNITED STATES v. GRUBER et al.

District Court, S. D. New York.
May 12, 1941.

292

Mathias F. Correa, U. S. Atty., of New York City (John L. Burling, of New York City, of counsel).

Samuel H. Kaufman, of New York City (Samuel H. Kaufman and Milton S. Gould, both of New York City, of counsel), for defendants.

CONGER, District Judge.

The defendants, Jacob Gruber, Fay Werthmann, and Elizabeth Miller have been indicted in four counts. The allegations of the indictment are that Jacob Gruber was an attorney having clients whose affairs were under investigation by the Securities and Exchange Commission, and that he and his secretary Fay Werthmann, conspired with Elizabeth Miller, the chief telephone operator of the New York Regional office of the Securities and Exchange Commission, inducing Elizabeth Miller to arrange a conference system whereby they were plugged in on certain long distance telephone calls being made between the New York Regional office and the Chicago Regional office of the Securities and Exchange Commission.

The first count of the indictment alleges a conspiracy between the three defendants, in which three objectives of the conspiracy are set out: (1) to defraud the United States concerning its governmental function of securing free and private communications between its officers, agents and employees by depriving the United States of the loyal, conscientious, faithful, disinterested and honest services of its employee, Elizabeth Miller; (2) to defraud the United States of sums of money by the making of long distance telephone calls for the private use and benefit of the defendant Jacob Gruber, which calls were charged to and paid for by the United States Securities and Exchange Commission; and (3) to commit offenses against the United States in violation of Sections 605 and 501 of Title 47 U.S.C.A. Six overt acts, in furtherance of the conspiracy, are then set out in detail.

The second, third and fourth counts allege, on different specific dates, that the defendant Miller, in violation of §§ 501 and 605, of Title 47 U.S.C.A., did intercept interstate telephone communications made by the Securities and Exchange Commission, and did divulge the existence, contents, substance, purport, effect and meaning of said telephone conversations to defendant Gruber; and that defendants Gruber and Werthmann unlawfully, willfully and knowingly aided, abetted, counselled, commanded, induced, procured and advised the said Elizabeth Miller to intercept the said telephone communications and to divulge the contents to the other defendants.

These defendants contend that the indictment does not set forth the commission of any crime against the United States and that the statutes which defendants are charged with violating are inapplicable to the facts alleged in the indictment for the following reasons:

(a) The statute, 47 U.S.C.A. § 605, is declaratory of a rule of evidence and is not penal in character;

(b) The statute is applicable only to employees of communication carriers; and

(c) The words to divulge or publish as used in the statute refers to testimony before a court or other duly constituted judicial or administrative body.

I shall first take up the consideration of the second, third and fourth counts of the indictment (the substantive counts). These counts of the indictment charge that the defendant, Elizabeth Miller, unauthorized to do so, willfully, unlawfully and knowingly intercepted the telephone communications in question, and divulged the same to defendant Gruber and Werthmann.

This brings up for consideration § 605 of the Communications Act of 1934, 47 U.S. C.A. § 605. Defendants argue that this section is not a penal statute, but announces a prohibitory rule of evidence only. The clause of § 605 upon which the government relies reads as follows: "No person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *."

Defendants cite cases, several of them from the United States Supreme Court, in support of their argument. These cases all had to do with the use, in the trial of criminal cases, of evidence obtained by wire-tapping. This sort of evidence has been condemned and convictions obtained in whole or in part by such evidence are set aside. Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314; Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298; Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307. The only question before the courts in those cases was whether evidence so obtained could be used. They held not. Defendants therefore argue that this section, under these decisions, has been construed to be declaratory of a rule of evidence only. A careful reading of these cases, and other cases cited, fail to convince me that they hold any such thing. There was no issue before the court of the criminality of the actions of those who wire-tapped and divulged the result. It was a narrow specific question which was presented to the courts, and decided on this narrow specific question alone. As I read the cases, they hold that § 605 prohibits wire-tapping and divulgence, and that any evidence obtained thereunder is illegal evidence and cannot be used without consent.

Standing along § 605 prohibits the doing of certain things. It, standing alone, is not penal in that it contains no penalty. It prohibits, but does not penalize. It has no teeth, and were we to consider this section alone, my decision would be for the defendants. It must, however, be read in connection with § 501, which reads as follows: "Any person who willfully and knowingly does or causes or suffers to be

done any act, matter, or thing, in this chapter prohibited or declared to be unlawful * * * shall, upon conviction thereof, be punished for such offense, for which no penalty (other than a forfeiture) is provided herein * * *."

This section puts teeth into § 605. The one section prohibits, the other sets up the penalties for a violation of those things prohibited. It does so by its very language. Although § 605 is within Title VI, § 601 et seq. (Miscellaneous Provisions) of Chapter 5, of Title 47 U.S.C.A., and § 501 is within Title V, § 501 et seq. (Penal Provisions) of Chapter 5, of Title 47 U.S.C.A., it should be noted that § 501 must apply, since both are within the same chapter (Chapter 5) to which, by its specific provisions, § 501 states it is to apply. There is support for this proposition to be found in the first Nardone case, supra, 302 U.S. 379, 58 S.Ct. 275, 276, 82 L.Ed. 314. There the Court, after stating generally the provisions of § 605, and quoting that part here relied on by the government, stated immediately following: "Section 501 penalizes wilful and knowing violation by fine and imprisonment."

Defendants in support of their contentions have brought to my attention a letter of the learned Attorney General of the United States, to the Chairman of the Judiciary Committee of the House of Representatives. I can find no support of defendants contention in this letter. He does not state that wire-tapping and the divulgence of the information is not a crime. He is not writing on that subject. He is writing about the use of information acquired by wire-tapping, particularly by Federal Officers. He does state that wire-tapping alone is not a crime. I quote paragraph 2 of his letter:

"There is no Federal statute that prohibits or punishes wire tapping *alone*. The only offense under the present law is to 'intercept any communication *and* divulge or publish' the same. Any person, with no risk of penalty may tap telephone wires and eavesdrop on his competitor, employer, workman or others and act upon what he hears or make any use of it *that does not involve divulging or publication*." (Italics mine.)

■■ Defendants also argue that § 605 applies to interception of telephone communications only by employees of common carriers engaged in interstate communications. The statute states "no person * * *", and "person" is defined as any-one including an individual, partnership, association, joint stock company, trust or corporation. 47 U.S.C.A. § 153. Further, in the first Nardone case, supra, 302 U.S. 379, 382, 58 S.Ct. 275, 276, 82 L.Ed. 314 the court stated:

"We nevertheless face the fact that the plain words of section 605 forbids any-one, unless authorized by the sender, to intercept a telephone message, and direct in equally clear language that *'no person'* shall divulge or publish the message or its substance to *'any person.'* (Italics in original opinion.)

The language of the statute is so plain, that to construe it as the defendants request would be tantamount to inserting something in the statute which is not there. It is not the province of the courts to misconstrue plain language; nor is there any excuse, where there is no ambiguity, for not taking the words in their accepted meaning.

■ As to the words "divulge or publish", I cannot conceive that this refers only to a divulgence in court. The section prohibits divulgence or publication to "any person". As was held in the first Nardone case, supra, the words "any person" and "no person" should be taken at their face value. The words "any person" in the section means exactly what it says, "any person".

■ Holding as I do, it therefore follows that the indictment in counts second, third and fourth correctly charges a crime against the defendant Elizabeth Miller. To connect the other defendants with the crime, the indictment charges in each of said counts that the other defendants unlawfully, willfully, and knowingly aided, abetted, counselled, commanded, induced, procured and advised the said defendant Elizabeth Miller to intercept the said unlawful communications and to divulge the contents thereof. This correctly charges these two defendants, and makes them principals insofar as the charge is concerned. 18 U.S.C.A. § 550.

I have come to the conclusion that counts second, third and fourth correctly charge a crime against all the defendants.

■ Examining count one (the conspiracy) in the light of my decision regarding the other three counts, I have concluded that it also correctly charges a crime against all the defendants.

The motion to quash the indictment is denied.

The defendants second motion is to suppress evidence. This court, at this time, cannot order the suppression of any evidence which the government might use, for there is no way of telling whether or not the government intends to use any evidence which it might have received by wire-tapping. There are no facts before this court which show that the government intends to use any evidence, or has employed any evidence so obtained. The indictment does allege that the various defendants were in telephonic communications with each other, but this, alone, is not enough. Mr. Justice Frankfurter, in the second Nardone case, supra, 308 U.S. 338, 60 S.Ct. 266, 268, 84 L.Ed. 307, pointed out the correct procedure herein:

"A sensible way of dealing with such a situation—fair to the intendment of § 605, but fair also to the purposes of the criminal law—ought to be within the reach of experienced trial judges. The burden is, of course, on the accused in the first instance to prove to the trial court's satisfaction that wire-tapping was unlawfully employed. Once that is established * * the trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree."

This motion must be denied, but without prejudice, to a later renewal.

The government has offered to state certain of the particulars requested by the defendant. Since the argument of the motion, the defendants have entered an order accepting the said particulars offered, and this motion is therefore withdrawn.

Settle orders on notice.