**UNITED STATES v. SULLIVAN.**

Crim. No. 1696–53.

United States District Court,
District of Columbia.

Nov. 19, 1953.

T. Emmett McKenzie, Washington, D. C., for the defendant, for the motion.

Leo A. Rover, U. S. Atty., and Frederick G. Smithson, Asst. U. S. Atty., Washington, D. C., opposed.

HOLTZOFF, District Judge.

The question presented is whether the action of a law enforcement officer in listening to a telephone conversation between an informer and a suspect, with the knowledge and consent of the former, is within the ban of the statute prohibiting what is popularly known as "wire tapping".

This is a motion to suppress evidence in a criminal prosecution for violations of the Narcotic Acts. The motion is directed against articles seized pursuant to a search warrant on premises occupied by the defendant. It is claimed that the search warrant was illegally issued in that the affidavit on which it was based, indicated that some of the

Information was obtained by listening to a telephone conversation between an informer and the defendant, in which arrangements were made for the purchase of a narcotic drug from the defendant. It is admitted by both parties that this conversation was overheard with the knowledge and consent of the informer.

 No constitutional question is involved, since interception of a message does not constitute a violation of any constitutional right.[1] The subject is within the regulatory power of the Congress. The statute on which the defendant relies is contained in Section 605 of the Act of June 19, 1934, 48 Stat. 1103; 47 U.S.C.A § 605, the pertinent provisions of which read as follows:

> "* * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * * *."

It is obvious from the phraseology of the statute that it was aimed at actions of two types: first, it sought to prohibit a telephone switchboard operator from divulging any conversation that may be overheard, or telegraph or radio operator from disclosing the contents of a telegram or radiogram; and second, it sought to preclude any unauthorized person from surreptitiously attaching some mechanical apparatus to a telephone or telegraph wire and thereby listening to or otherwise intercepting communications passing over the wire, without the knowledge of the parties to the conversation or message as the case may be.

 It was originally argued by attorneys representing the United States that the prohibition should not be construed as applying to the Government, just as laws prescribing speed limitations do not apply to a policeman pursuing a criminal, or to the driver of a fire engine responding to an alarm. This contention was overruled by the Supreme Court, against a vigorous dissent. It was held that Federal agents were not excluded from the ban of the statute, and that if it were desired to exempt them entirely or partially, the matter was one for the Congress to determine. It was concluded that evidence obtained by tapping telephone wires was inadmissible in a Federal court on the ground that the giving of testimony necessarily involved divulging information obtained by this means.[2] This prohibition was extended by judicial construction to cover not only the intercepted communications themselves, but also evidence procured through the use of knowledge gained from such communications.[3] In this district this ban has been applied to the use of such information in an affidavit submitted in connection with an application for a search warrant.[4]

 The problem presented in the case at bar is, however, far different. It involves a situation in which one of the parties to the conversation permitted another person to listen to it. Obviously, it could hardly have been within the contemplation of the Congress to prohibit such a practice, which is frequently followed for entirely legitimate and innocuous purposes. For example, it is common for busy executives, both in private industry and in Government, to ask their secretaries to listen on an extension to telephone conversations and make notes of what is said. Likewise it is not unusual to attach a mechanical recording device to a telephone instrument for similar purposes. Sometimes the other party to the conversation is in-

1. Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944.

2. Nardone v. United States, 302 U.S. 379, 382–384, 58 S.Ct. 275, 82 L.Ed. 314.

3. Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298; Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307.

4. United States v. Plisco, D.C., 22 F.Supp. 242.

formed that notes are being taken, or a record is being made, but frequently he is not. A doubtful construction of the statute that would prohibit such accepted usages should not be adopted. An unequivocal expression on the part of the Congress to preclude a person from permitting his secretary to listen to his telephone conversations would seem to be required in order to stop this practice. In this connection, we must bear in mind that every statute must receive a sensible construction and should not be interpreted in such a manner as to reach an absurd result.[5] If possible every statute must be construed with a view to effectuating the legislative intent. Obviously the Congress could not have intended to enact a ban on harmless recognized practices that are in the interests of accuracy and efficiency. Its attention was directed to illegitimate disclosure of messages by confidential employees and to surreptitious wire tapping, which appeared abhorrent and pregnant with danger.

The first reported case in which this subject was considered is the decision of Judge Gibson for the Western District of Pennsylvania, in United States v. Yee Ping Jong, 26 F.Supp. 69. As is true of the case at bar, this ruling also involved a prosecution for the violation of narcotic laws. In both instances, an agent of the narcotic bureau caused an informer to call the prospective defendant on the telephone. With the informer's knowledge the telephone conversation was recorded by a device attached to the telephone wire. The court held that the record of this conversation was admissible in evidence at the trial. This decision is on all fours not only as to the principle of law involved, but also as to the facts. Judge Gibson commented on this matter as follows, 26 F.Supp. at page 70:

"The manner in which the conversation in question was recorded does not seem to present such an interception as is contemplated by the quoted statute. Webster's New International Dictionary defines the verb 'intercept' in part as follows: 'To take or seize by the way, or before arrival at the destined place; * * *.' The call to the defendant was made by Agent White, and the conversation between his interpreter and the defendant was not obtained by a 'tapping of the wire' between the locality of call and the locality of answer by an unauthorized person, but was, in effect, a mere recording of the conversation at one end of the line by one of the participants."

A different result was subsequently reached in the Second Circuit in United States v. Polakoff, 112 F.2d 888, 134 A. L.R. 607. The basis of the court's decision was that the word "sender" as used in the statute applied to both parties to a telephone conversation and that, therefore, unless both parties consented to its interception the statutory ban applied. Judge Clark wrote a strong dissenting opinion, in which he relied on United States v. Yee Ping Jong, supra, and made the following significant observations, 112 F.2d at page 891:

"Reasons of policy justify the making of telephonic communications privileged for the two parties involved; they do not justify making them so privileged to one party as against use by the other.

\* \* \* \* \* \*

"There can be no real distinction—there is none suggested in the statute or by common sense—between these recordings and a transcription made by a private secretary over the telephone in an outer

---

5. Church of the Holy Trinity v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L. Ed. 226; Pickett v. United States, 216 U.S. 456, 461, 30 S.Ct. 265, 54 L.Ed. 566; American Security & Trust Co. v. Commissioners of District of Columbia, 224 U.S. 491, 495, 32 S.Ct. 553, 56 L.Ed. 856; Crooks v. Harrelson, 282 U.S. 55, 51 S. Ct. 49, 75 L.Ed. 156.

office, or by a servant on an upstairs extension in a house, or even by a person listening at the telephone receiver held by the party to the conversation. Nor can it be of importance whether the transcriber or the party first makes the suggestion for the recording; in either event it is the party who has the power to direct or prohibit its transcription. Neither is it important whether evidence of the conversation comes from the mechanical device of a record or from testimony of those directed to listen in, except that the mechanical device gives the more trustworthy evidence."

Subsequently in Goldman v. United States, 316 U.S. 129, 134, note 8, 62 S.Ct. 993, 995, 86 L.Ed. 1322, the Yee Ping Jong case, supra, was cited as an authority in support of the following statement contained in the opinion of Mr. Justice Roberts:

"As has rightly been held, this word [i. e., 'intercept'] indicates the taking or seizure by the way or before arrival at the destined place. It does not ordinarily connote the obtaining of what is to be sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the moment, it comes into the possession of the intended receiver."

The inference seems to be justified that the Supreme Court has approved the conclusion in the Yee Ping Jong case and that, therefore, the Polakoff case should not be regarded as authoritative. In fact this was the view of one of the Circuit Judges for the Second Circuit in Reitmeister v. Reitmeister, 162 F.2d 691, where Judge Chase stated in a concurring opinion, 162 F.2d at page 697:

"Because I do not believe that our decision in United States v. Polakoff, 2 Cir., 112 F.2d 888 [134 A.L.R. 607] has survived that of the Supreme Court in Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322, I do not think that Sec. 605 of Title 47 U.S.C.A., can

now be given the meaning and scope then attributed to it."

Thus the status of the Polakoff case is impaired both by the approval of the Yee Ping Jong case by the Supreme Court, as shown above; and also by the fact that there was both a strong dissent in the original opinion in the Polakoff case and a subsequent recognition by one of the Circuit Judges for the Second Circuit of the fact that the Polakoff case must be deemed no longer law in view of the Supreme Court opinion in the Goldman case.

In this court, the point was decided in United States v. Lewis, 87 F.Supp. 970, 973, where the view of Judge Gibson in the Yee Ping Jong case was adopted in the following words:

"In my opinion the statute is violated if a third person, unbeknownst to either party to the conversation, listens to what passes over the line and then divulges what he has heard, or, if the third person causes the conversation to be recorded by a mechanical or electrical device, without the knowledge of either party to the conversation, and then discloses what has been recorded. I hold that it is not a violation of the statute if the conversation is recorded, manually, mechanically, or electrically, at the instance of or with the consent or knowing acquiescence of one of the parties to it."

While the conviction in the Lewis case was reversed on other grounds, 87 U.S. App.D.C. 274, 184 F.2d 394, 24 A.L.R.2d 881, this point was not discussed by the Court of Appeals and, therefore, the foregoing ruling was not disapproved.

■■ The Court of Appeals for this jurisdiction has not expressly passed upon the question here involved. In James v. United States, 89 U.S.App.D.C. 201, 191 F.2d 472, there is a remark that seems to support the defendant's contention in this case. That comment, however, was *obiter dictum* and cites the Polakoff case as an authority. It does not appear that the Court of Appeals had before it the later history of the Polakoff

**484**

case. In any event, as has been frequently held both by the Supreme Court and by the Court of Appeals, a dictum should not be regarded as a ruling. The question must be deemed still open so far as the Court of Appeals for this Circuit is concerned. On the other hand, on principle as well as in the light of the state of the authorities discussed above, the conclusion seems inescapable that the Act of Congress does not apply to listening to a telephone conversation with the consent of one of the parties to it.

There is another matter to be considered in this connection. The use of decoys and the employment of artifice and stratagem in the detection of crime and the apprehension of criminals, has been approved by the Supreme Court.[6] Court records show that in a great majority of prosecutions under the narcotic laws, such means are used by law enforcement agencies. It would be incongruous and untenable to say that any decoy, artifice, or stratagem may be used provided it does not involve the telephone.

Motion to suppress is denied.

---

6. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413.