**UNITED STATES v. STEPHENSON.**
**Cr. No. 1838-53.**

United States District Court,
District of Columbia.
May 17, 1954.

Leo A. Rover, U. S. Atty., Edward Troxell, Asst. U. S. Atty., Michael F. Burke, Attorney, Dept. of Justice, Washington, D. C., for plaintiff.

Nicholas Chase and Theodore Jaffe, Washington, D. C., for defendant.

PINE, District Judge.

Defendant is charged, in a three-count indictment, with perjury allegedly committed when he appeared as a witness before the House of Representatives Subcommittee on Defense Activities of the Committee on Armed Services. The false statements alleged in the indictment are that he had never talked to a Mr. Parsons from the Century Company, that he had not proposed to anyone that he represent them on a percentage basis, and that he recalled no discussion in a telephone conversation to Los Angeles of the allowability of any fee or salary to be paid him under a Government contract.

He has filed a motion [1] to suppress a recording, and a transcription thereof, of a telephone conversation between the said Parsons and himself, on the ground

1. This procedure is required by Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307.

that it was procured in violation of law, and that is the motion before me.

It has been suggested that the interception of telephone calls, or "wire-tapping," is unethical and "dirty business," but the present concern of the Court is the law as it is contained in the statutes and appropriate judicial pronouncements.

The facts, concisely stated, are as follows: Parsons, from his office in California, telephoned defendant in Washington, and the two engaged in a telephone conversation. Parsons is not a Government agent. He previously had caused to be attached to his telephone instrument a mechanical device which would record conversations conducted by the use of his telephone. The device was attached to the wiring in the bell box of Parsons' telephone before the wiring reached the receiver and transmitter. The conversation between Parsons and defendant was recorded by this device. Defendant had no notice that the conversation was being recorded, and did not authorize it. There was no automatic tone warning signal or "beep" system installed in Parsons' device as required by the Federal Communications Commission regulation. Parsons provided the Subcommittee and the District Attorney with a typewritten transcript of the recording, and has provided the District Attorney with the recording itself.

■ The question is whether it should be suppressed. Under common law, it would be admissible on the ground that the Court would not take notice of the manner in which evidence is obtained. It is not made inadmissible by the Fourth and Fifth Amendments to the Constitution, under the decision of the Supreme Court in Olmstead v. United States, 1928, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944. The only ground, if one exists, must therefore be found in the statutes, and defendant cites the "Communications Act of 1934," 47 U.S.C.A. § 151 et seq., par-

ticularly Sec. 605 thereof, where the following language appears:

> "no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person".

The meaning and scope of this statute, therefore, control a decision on this motion, and in presenting it, counsel have raised several issues, which I shall now discuss.

■ The first issue is whether the statute is broad enough to include Parsons, or is its interdiction aimed only at strangers or parties other than the participants in a telephone conversation. Its language admits of no exception, for it provides that "no person" shall do the forbidden act except as provided in the statute.

The Supreme Court, in Nardone v. United States, 302 U.S. 379, 382, 58 S.Ct. 275, 276, 82 L.Ed. 314 (1937) had occasion to determine the meaning of the term "no person," and held "that the plain words of section 605 forbid *anyone*, unless authorized by the sender, to intercept a telephone message" (italics supplied.) True it is, this language was used in a case where the Government contended that "Congress did not intend to prohibit tapping wires to procure evidence",[2] but in view of the Supreme Court's all-inclusive interpretation, I do not feel at liberty to go counter to it, even if I had the disposition so to do, which I do not have in view of the comprehensive mandate of Congress. Also see United States v. Polakoff, 2 Cir., 1940, 112 F.2d 888, 889, 134 A.L.R. 607, certiorari denied 311 U.S. 653, 61 S.Ct. 41, 85 L.Ed. 418; and United States v. Gruber, D.C. 1941, 39 F.Supp. 291, 294 on this point and others as hereinafter discussed. I am aware that my colleague, Judge Holtzoff of this court, for whose opinions I have the highest regard, has come to a con-

2. In the Nardone case, Government agents tapped the telephone wires.

trary conclusion in United States v. Lewis, D.C. 1950, 87 F.Supp. 970, 973, and in United States v. Sullivan, D.C. 1953, 116 F.Supp. 480, as well as Judge Clark in his dissenting opinion in United States v. Polakoff, supra; but I am constrained to disagree with their views. Accordingly, I hold that Parsons comes within the reach of the statute providing that "no person" shall do the forbidden acts.

The second issue is whether the conduct of Parsons constituted an interception within the meaning of the statute. There is nothing in the Communications Act, supra, indicating that Congress intended a meaning other than its ordinary meaning. Accepting its ordinary meaning, I have no difficulty in reaching the conclusion that the acts of Parsons above set forth constituted an interception. Webster's New International Dictionary gives this definition to intercept, namely, "to take or seize by the way, or before arrival at the destined place." Both in space and time, the taking in this instance was before the arrival of the communications at the destined place. I am therefore of the view that the acts of Parsons above set forth constituted an interception within the meaning of the statute.

Judge Learned Hand, in United States v. Polakoff, supra, whose opinion was concurred in by Judge Augustus N. Hand, has expressed the same view as to the meaning of intercept. He remained of the same opinion in a later case, namely Reitmeister v. Reitmeister, 2 Cir., 1947, 162 F.2d 691, 694. See also United States v. Fallon, 1940, 112 F.2d 894 per curiam decision, Second Circuit; and United States v. Gruber, 2 Cir., 1941, 123 F.2d 307, 309, opinion by Judge Augustus N. Hand to the same effect. This view also finds support in United States v. Guller, D.C.E.D.Pa. 1951, 101 F.Supp. 176, 178 in which Judge Follmer states as follows: "The interception forbidden by Section 605 of

the Communications Act of 1934 * * must be by some mechanical interpositions in the transmitting apparatus itself, that is the interjection of an independent receiving device between the lips of the sender and the ear of the receiver." Citing Reitmeister v. Reitmeister, supra.

My attention has been called to the fact that the Supreme Court, in Goldman v. United States, 1942, 316 U.S. 129, 134, 62 S.Ct. 993, 86 L.Ed. 1322, after approving the dictionary definition of "intercept" as above stated, added that it does not ordinarily connote the obtaining of what is to be sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the moment, it comes into the possession of the intended receiver. And it might be argued from this language that the word "moment" is synonymous with the infinitesimal period of time occurring between interception and reception, and that therefore there has been no interception. But such argument would seem to be untenable, for an interception one thousand miles away, or any interception for that matter, would likewise involve only an infinitesimal period of time,[3] and the language used should be considered in the context of the facts of the case. There the recording was made by a detectaphone installed by agents in an adjoining room and unattached to the telephone, and the Court ruled that such recording made of defendant's words spoken into a telephone did not come within the purview of the statute. Reading the language of the Court in such context as I must, I am of the opinion that it is not a qualification of the general definition of intercept which the Court approved. The Court of Appeals for the Second Circuit, by a divided court on this point, in Reitmeister v. Reitmeister, supra, is also of the opinion that the Goldman case has not overruled their opinion in United States v. Polakoff, supra.

3. The electrical impulses transmitting a telephone conversation travel with the speed of light, or 186,000 miles per second.

My view of the meaning of interception as above expressed is not a unanimous view, but I believe the weight of authority supports it. To the contrary is United States v. Yee Ping Jong, D.C., 26 F.Supp. 69, 70, in an opinion by Judge Gibson, in which he held that a recording of a conversation between a Government agent and defendant, by a similar device, was not an interception within the meaning of the statute, although he approved the dictionary definition above set forth. Also contrary to this point of view are the opinions of Judge Holtzoff in the cases of United States v. Lewis and United States v. Sullivan, supra. In the first-mentioned case, Judge Holtzoff places his principal reliance on the opinion of Judge Gibson on this point in the Yee Ping Jong case, supra. In the second-mentioned case, he again relies on the opinion of Judge Gibson and comes to the conclusion that the Supreme Court has given a different definition to the word "intercept" when it used the language in Goldman v. United States, supra, above set forth. He also draws the inference therefrom that the conclusion of Judge Gibson has been approved and that the opinion of Judge Learned Hand in the Polakoff case, supra, should no longer be regarded as authoritative, particularly in view of the statement made by Judge Chase in the concurring opinion in Reitmeister v. Reitmeister, supra. I have given thoughtful and serious consideration to the views of Judges Chase, Holtzoff, and Gibson on this point, but am not able to concur with them for the reasons above stated.

The third issue is whether the "playing back" of the record in court would constitute a divulgence within the meaning of the statute. This would seem to be answered by the opinion of the Supreme Court in the first Nardone case, supra, in which the Court stated that the plain words of the statute "direct in equally clear language that 'no person' shall divulge or publish the message or its substance to *'any person'*" and that "to recite the contents of the message in testimony before a court is to divulge the message." (Italics supplied.)

The fourth issue is whether the authorization given by Parsons when he installed and utilized the recording device placed the recording beyond the interdiction of the statute, and that requires a decision on the meaning of the word "sender" as used in the statute. Ordinarily the word "sender" means the person who utters the message, and under that concept it would seem that what Parsons said would be admissible because he authorized the interception. That concept would be applicable in telegraphic exchanges of messages, but the question before me is whether the meaning of the word "sender" when applied to telephonic communications, requires, by reason of their character, the authorization of the receiver as well. Judge Hand, in United States v. Polakoff, supra, envisioned the same distinction, and analyzed the problem as follows: He recognized that the word "sender" as used in the statute was less apt for a telephone conversation than for a telegram, but that every telephone conversation, like other conversation, is antiphonal; that each party is alternately sender and receiver, and that it would deny all significance to the privilege accorded by the statute, to hold that because one party originated the call, he had the power to surrender the other's privilege. He also stated that, while it might be pedantically argued that each party had the power to consent to the interception of so much as he said, that would be extremely unreal, for in the exchange, each answer may and often does imply by reference some part of that to which it responds, and that it is impossible satisfactorily so to dissect a conversation. He therefore concluded that the privilege is mutual and that both must consent to the interception of any part of the talk.

I subscribe to Judge Hand's analysis, with the exception that I believe a factual situation might arise where the authorization of one party to a telephone communication would suffice un-

der the statute, that is to say, a telephone conversation which is not antiphonal; but from the transcript of the recording in this case, which has been received in evidence on the motion only, the conversations are clearly antiphonal and come within the general rule expressed by Judge Hand. In addition, the expert witness testified that there was no physical method by which the record could be deleted or severed, so as to permit playing back only the voice of Parsons. Of course the words uttered by defendant could be deleted from the transcription made from the recording disc, leaving only the words of Parsons for introduction in evidence, but this would deprive defendant of his right to be confronted by the best evidence, namely the disc, which is available in this case. In addition, the evidence shows that more than one transcription has been made from this disc and that they differ in many respects, due no doubt to difficulty in hearing distinctly what the recording reproduced. I know of no way to require defendant to agree in advance as to which, if any, is a correct version, assuming the transcription as secondary evidence could be received under some exception to the best evidence rule.

The only opinion of the Court of Appeals of this circuit bearing directly on the question here involved which has been brought to my attention is James v. United States, 1951, 89 U.S.App.D.C. 201, 191 F.2d 472, 474, where the appellants complained that the District Court erred in refusing to permit them to play in the presence of the jury a wire recording of an alleged conversation between a Government witness and two defense witnesses for the purpose of impeaching the Government witness. The recording was played in the hearing of the Government witness, in the absence of the jury, after which he denied that it was his voice recorded on the wire. But the Court then significantly added that "even if it was his voice, the recording was obviously inadmissible and the court did not err in rejecting it, because

Charles [the Government witness] did not consent to the interception of the conversation and the use of the recording as evidence." Also, significantly, the Court cited United States v. Polakoff, supra. In Billeci v. United States, 87 U.S.App.D.C. 274, 184 F.2d 394, 24 A.L.R.2d 881, which was the appeal of United States v. Lewis, supra, the Court of Appeals did not discuss the question herein involved, but reversed on other grounds.

I therefore am of the opinion that the authorization required by the statute is lacking in this case.

For the foregoing reasons, I come to the conclusion that the acts of Parsons above set forth constituted a violation of Sec. 605 of the Communications Act, supra. This conclusion is consonant with, and supported by, the regulation of the Federal Communications Commission requiring the "beep" system to be installed whenever telephonic recording devices are used.

The acts being in violation of the statute, the evidence obtained thereby must be suppressed under the Nardone cases, supra, and Weiss v. United States, 1939, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298. Accordingly, the motion to suppress will be granted.

Pursuant to the second Nardone case, supra [308 U.S. 338, 60 S.Ct. 268], I shall hear further argument and evidence if necessary as to what else, if anything, should be suppressed as "fruit of the poisonous tree", to use the language of Nardone.

Of course, I do not know what evidence the Government possesses other than that hereby required to be suppressed, but in the event the granting of this motion leaves it, in the opinion of the United States Attorney, without sufficient evidence to proceed, it is not necessary that it rest with my judgment, as in the past, but under the authority of the recent case of United States v. Cefaratti, 91 U.S.App.D.C. 297, 202 F.2d 13, it may take an appeal and obtain a review of my decision.