**Timothy S. FLANDERS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 12317, 12318.**

United States Court of Appeals.
Sixth Circuit.

April 26, 1955.

**164**

Ward Hudgins, Nashville, Tenn., for appellant.

James L. Roberts, Asst. U. S. Atty., Nashville, Tenn., Fred Elledge, Jr., Nashville, Tenn., on the brief, for appellee.

Before SIMONS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Appellant, Timothy S. Flanders, was arrested by agents of the Federal Bureau of Narcotics in Nashville, Tennessee, on December 2, 1953, and found to be in the illegal possession of heroin. He was thereafter indicted for violation of Title 26 U.S.C.A. § 3224(b) and (c), and upon trial before a jury, was found guilty; and sentence was imposed in accordance with the law.

Appellant was convicted on evidence that he had agreed, in a long distance telephone conversation from New York City to Nashville, Tennessee, with one James Merritt, to transport heroin from New York City to Nashville; and that, in accordance with the conversation, he transported the heroin to Nashville, where he was arrested. Merritt previously had been arrested for violation of the drug laws, and the agents of the Bureau of Narcotics, in order to catch the man who was supplying him with narcotic drugs, prevailed upon him to call appellant Flanders and ask him to bring heroin to Nashville for sale where it could be sold at a good price. While Merritt in Nashville spoke to Flanders in New York, the agents of the Bureau of Narcotics listened to the conversation on extension phones in the offices from which Merritt was calling; and they did this with Merritt's knowledge and consent.

The only question before the court on appeal is one of law: whether the district court erred in refusing to grant appellant's motion to suppress the evidence secured in the telephone conversation on the ground that it constituted an interception of a telephone communication in violation of Title 47 U.S.C.A. § 605, the pertinent provisions of which read: "* * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance,

purport, effect, or meaning of such intercepted communication to any person; * * *."

This question apparently was first considered in the case of United States v. Yee Ping Jong, D.C.Pa., 26 F.Supp. 69, where officers of the Bureau of Narcotics, with the knowledge and consent of the informer who made a telephone call, recorded the conversation by means of a device attached to a wire at the place where the call was made. Upon the trial, the district court permitted the recording to be introduced in evidence, and in that case, like the one before us, the evidence obtained because of the call led to the arrest and, eventually, the trial of the defendant. In denying a motion for a new trial, the late Judge Gibson stated that the manner in which the conversation in question had been recorded did not appear to present such an interception as was contemplated by the statute. He observed that according to Webster's New International Dictionary, the verb, "intercept," was defined in part as meaning "To take or seize by the way, or before arrival at the destined place." It was further noted that the conversation with the defendant was not obtained by a tapping of the wire between the locality of the call and the locality of answer by an unauthorized person but was, in effect, a mere recording of the conversation at one end of the line by one of the participants.

However, a year later, in United States v. Polakoff, 2 Cir., 112 F.2d 888, 889, a contrary conclusion was reached, and the court held that one who "listened in" on a telephone conversation with consent of only one party to the conversation intercepted such communication within the meaning of the statute. Judge Learned Hand, writing for the court, held that "anyone intercepts a message to whose intervention as a listener the communicants do not consent; the means he employs can have no importance; it is the breach of privacy that counts", and he observed that it made no difference whether one of the parties consented, "because, no matter what the scope of any such implied con-

sent, it cannot extend to the intervention of prosecuting agents bent upon trapping the 'sender' criminally." Judge Augustus N. Hand joined the writer of the opinion in his concurrence, while Judge Clark wrote a strong dissenting opinion in which he observed that, as pointed out in United States v. Yee Ping Jong, supra, "the verb 'intercept' means 'to take or seize by the way, or before arrival at the destined place' (Webster's New International Dictionary, 2d Ed.)," and does not aptly refer to a communication which has reached its intended destination and is recorded at one end of the line by one of the participants or by his direction. "Reasons of policy", he said, "justify the making of telephonic communications privileged for the two parties involved; they do not justify making them so privileged to one party as against use by the other. * * * There can be no real distinction—there is none suggested in the statute or by common sense—between these recordings and a transcription made by a private secretary over the telephone in an outer office, or by a servant on an upstairs extension in a house, or even by a person listening at the telephone receiver held by the party to the conversation. * * Neither is it important whether evidence of the conversation comes from the mechanical device of a record or from testimony of those directed to listen in, except that the mechanical device gives the more trustworthy evidence. * * * In last analysis we should turn to the statute, itself, for that is what we are construing. And that, it seems to me, by its terms excludes the construction here placed upon it. The statute does not refer directly to a tapping of the wires; it provides only that the *communication* must not be intercepted; * * *. If the communication has reached the person for whom it is intended, it is hard to see how it is intercepted when that person directs it to be transcribed." In discussing the other provisions of the section, Judge Clark mentioned as "highly significant" the following provision: " 'No person not being entitled thereto shall receive or as-

sist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto.'" He declared that the clear inference of the foregoing would appear to be that the person *entitled to receive the communication* might himself use it, or the information therein contained, for his own benefit, or might have somebody else use it for him.

Subsequent to the decision in United States v. Polakoff, supra, the Supreme Court, in Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 995, 86 L.Ed. 1322, had occasion, in discussing the language of the statute, to state what it considered to be the meaning of the word, "intercept," as used therein, and observed: "The same view of the scope of the Communications Act follows from the natural meaning of the term 'intercept'. As has rightly been held, this word indicates the taking or seizure by the way or before arrival at the destined place. It does not ordinarily connote the obtaining of what is to be sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the moment, it comes into the possession of the intended receiver." The above quotation was followed by a footnote, citing United States v. Yee Ping Jong, 26 F.Supp. 69, 70.

After the decision of the Supreme Court in Goldman v. United States, supra, the same question that arose in the Court of Appeals for the Second Circuit in United States v. Polakoff, supra, came before it again in Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691, 697. Judge Learned Hand stated that he did not believe that Goldman v. United States had overruled the decision of the Court of Appeals in United States v. Polakoff. Judge Chase, however, concurring on other grounds, stated that he did not believe the decision of the court in United States v. Polakoff had survived the decision in Goldman v. United States, and quoted from the latter case that "'The protection intended and afforded by the statute is of the means of communication and not of the secrecy of the conversation.'" He also emphasized that in United States v. Goldman, the Supreme Court, in its discussion of the meaning of the word, "intercept," as above quoted in this opinion, cited United States v. Yee Ping Jong, supra, as showing that what had been decided in that case had been "rightly held."

Prior to the decision of the district court in the instant case, aside from the above cases, the question has come, on three occasions, before the District Court for the District of Columbia. In United States v. Lewis, D.C., 87 F.Supp. 970, and in United States v. Sullivan, D.C., 116 F.Supp. 480, Judge Holtzoff held that where the telephone conversation was listened to by a third person, with the consent of one of the parties, there was no interception within the intendment of the statute.[1] In United States v. Stephenson, D.C., 121 F.Supp. 274, Judge Pine held, contrary to the Lewis and Sullivan cases, that the recording of a telephone conversation by one of the parties was a violation of the statute, and that the evidence obtained thereby should be suppressed. Subsequent to the decision in the Stephenson case, in this circuit, Judge McNamee, in the Northern District of Ohio, after a discerning examination of a number of the foregoing authorities, held, in a case involving the same question, that there was no interception of a telephone communication between a defendant and an informer, where it was listened to over an extension telephone by a third party with the consent of the informer. United States v. Pierce, D.C., 124 F.Supp. 264.[2]

---

1. The Lewis case was subsequently reversed, but on other grounds, 184 F.2d 394, 24 A.L.R.2d 881; the Sullivan case was affirmed without passing upon the issue in the instant case, D.C.Cir., 219 F.2d 760.

2. See comprehensive note on meaning of "interception," as used in the Communications Act, in Michigan Law Review, February 1955, p. 623.

■ We are of the opinion that where, by means of an extension phone, or other device, a third party "listens in" on a telephone conversation with the consent of one of the parties to the conversation, there is no interception of the communication, within the meaning of the statute. With respect for the high authorities that hold a contrary opinion, we are persuaded by the reasoning of those that adopt this view, and consider that the route we follow was pointed out by the Supreme Court in Goldman v. United States, supra.

■ In accordance with the foregoing, the judgment of the district court is affirmed.

Hutcheson, Chief Judge, dissented.