**UNITED STATES of America,**

v.

**Norma HILL, Defendant.**

United States District Court
S. D. New York,
Criminal Division.
Feb. 19, 1957.

Paul W. Williams, U. S. Atty., New York City, William D. Walsh, New York City, of counsel, for the United States.

Sabbatino & Todarelli, New York City, for defendant Hill, Thomas J. Todarelli, New York City, of counsel.

WEINFELD, District Judge.

The question at issue is the admissibility of tape recordings of certain telephone conversations.

The defendant is on trial under a three-count indictment charging her and others with two substantive violations of the narcotics laws and also with conspiracy to violate such laws. Dorothy Gray, an informer and special employee of the Federal Bureau of Narcotics, has testified that on a number of occasions she made long distance telephone calls to the defendant at her home in New York City from Washington, D. C., during the course of which the defendant agreed to sell narcotics and that thereafter as a result of such arrangements the sales were actually made in New York City. Several of these calls were made from the Washington office of the Federal Bureau of Narcotics.

The Government now offers tape recordings of these conversations. In substance, an agent of the Federal Bureau of Narcotics testified that when the special employee telephoned from the Bureau in Washington she, under his instructions, held the receiver of the telephone at a 90° angle in order to permit a highly sensitive microphone to be placed adjacent to the receiver; that the agent then held the microphone above the receiving part of the telephone through which the defendant's part of the conversation, as well as the special employee's, was heard. The microphone, according to the agent, was held as close as possible to the receiver and at times was placed against it and touched the ear piece. The microphone was jacked into a tape recorder and while the recording was made another agent plugged into the tape recorder an ear set through which he overheard both sides of the conversation. Needless to say the defendant was unaware that the conversation was being recorded.

██ The courts are in irreconcilable conflict as to whether the consent of one party to a listening in or recording of a conversation is binding upon the other who is without such knowledge. Most courts have held that where third persons with the consent of only one of the parties listen in on an extension phone they may testify as to what they heard.[1] Our Court of Appeals has held

to the contrary and taken the position that each party to a conversation is a sender as well as a receiver whose consent to interception is required before a communication may be divulged.[2] Since the defendant's consent was not obtained the issue presented is whether the recording was an interception within the meaning of § 605 of the Federal Communications Act.[3] I hold that it was.

The use of the microphone, whether it actually touched the receiving part of the phone or was held in close proximity to it, was an interception of the telephone communication in violation of the Act and in consequence tape recordings of the conversations are inadmissible.[4] Placing the microphone close to and at times in direct contact with the receiver was just as much an interception of the message sent by the defendant as if there had been an actual tap. However, I would not be understood to limit my exclusion of this evidence to the circumstance that the microphone from time to time came into actual contact with the receiver of the telephone. I do not believe the method employed to intercept the communication makes an essential difference. Even had the telephone conversation been recorded as a result of the use of a microphone so powerful that it could have picked up the defendant's message by being held a substantial distance away from the receiver, I would still bar its admission in evidence. It

1. See, e. g., United States v. Yee Ping Jong, D.C.W.D.Pa., 26 F.Supp. 69; United States v. Lewis, D.C.D.C., 87 F. Supp. 970, reversed on other grounds, 87 U.S.App.D.C. 274, 184 F.2d 394, 24 A.L.R.2d 881; United States v. Guller, D.C.Pa., 101 F.Supp. 176; United States v. Sullivan, D.C.D.C., 116 F.Supp. 480, affirmed 95 U.S.App.D.C. 78, 219 F.2d 760; United States v. Pierce, D.C.N.D. Ohio, 124 F.Supp. 264, affirmed, 6 Cir., 224 F.2d 281; Flanders v. United States, 6 Cir., 222 F.2d 163; United States v. White, 7 Cir., 228 F.2d 832; United States v. Bookie, 7 Cir., 229 F.2d 130; Rathbun v. United States, 10 Cir., 236 F. 2d 514, certiorari granted 352 U.S. 965, 77 S.Ct. 354, 1 L.Ed.2d 320. But cf. United States v. Stephenson, D.C.D.C., 121 F.Supp. 274.

2. United States v. Polakoff, 2 Cir., 112 F.2d 888; Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691. Accord, Rathbun v. United States, 10 Cir., 236 F.2d 514, 517, certiorari granted 352 U.S. 965, 77 S.Ct. 354, 1 L.Ed.2d 320. See also United States v. Gruber, 2 Cir., 123 F.2d 307, 309.

3. 47 U.S.C.A. § 605. "* * * and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."

4. Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314; Id., 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307.

cannot be said that the *microphone* did not pick up or intercept the communication before it reached the recipient.[5]

■ While the legislative history of § 605 is obscure, it would be unrealistic not to recognize that one of its prime purposes was to overcome the force of the Olmstead case,[6] which held there was no constitutional barrier against wire tapping. The very words of the section reveal that an essential purpose was to protect the privacy of telephone communications by preventing interference with or interception of a message during the course of its progress. As Mr. Justice Roberts said in the first Nardone case, "Congress may have thought it less important that some offenders should go unwhipped of justice than that officers should resort to methods deemed inconsistent with ethical standards and destructive of personal liberty. The same considerations may well have moved the Congress to adopt section 605 as evoked the guaranty against practices and procedures violative of privacy, embodied in the Fourth and Fifth Amendments of the Constitution."[7]

The Goldman case[8] is no authority for the admission of the evidence now offered. That case centered about a conference participated in by a number of persons in a room and only an incidental part of the conversation of one of them was transmitted over the phone. While it is true the Supreme Court held that the overhearing of that portion of the conversation by means of a detectaphone attached to a wall outside the room was not a violation of § 605, a careful reading of the opinion emphasizes that the fact that the overhearing of the telephone conversation was only incidental to overhearing the entire face to face conversation was a crucial factor in the Court's ruling. The Court in rejecting the defendant's contention that a communication is within the protection of the statute once the speaker has uttered the words with intent they constitute a transmission of a telephone conversation, said: "The validity of the contention must be tested by the terms of the Act fairly construed. So considered, there was never a 'communication' nor an 'interception' within the meaning of the Act."[9] Again the Court underscored that the person to person conference was the major factor in its ruling when it said, "Words spoken in a room in the presence of another into a telephone receiver do not constitute a communication by wire within the meaning of the section".[10] Thus the Goldman case must be held limited to the facts there presented.

Accordingly, it is my judgment that if the basic purpose of § 605 to protect the privacy of telephone conversations and their means of transmission is to be achieved, the present recording made by the use of a microphone rather than by the usual tap on a wire must be held to come within its ban.

5.  Rathbun v. United States and other cases cited in note 1, supra, generally interpret Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322, as holding that § 605 protects a telephone message only while in transitu but not if it is heard by a third party either at the same moment or after it reaches the recipient. But cf. United States v. Polakoff, 2 Cir., 112 F.2d 888; Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691. When one considers that the electrical impulse of a telephone message travels at the speed of light, or 186,000 miles per second, the fallacy of the time factor as the determinant becomes apparent. In any event, nothing in § 605 or its history indicates that Congress intended the time factor as a test in determining whether an interception occurred. Cf. United States v. Stephenson, D.C.D.C., 121 F.Supp. 274, 277.

6.  Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944.

7.  Nardone v. United States, 302 U.S. 379, 383, 58 S.Ct. 275, 277, 82 L.Ed. 314.

8.  Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322.

9.  Id., 316 U.S. at page 133, 62 S.Ct. at page 995.

10.  Ibid.

To admit the wire recording of the telephone conversation now offered would, in my view, make a shambles of § 605 and completely obliterate the purpose of the Congressional enactment. Science has made rapid advances in the communication field since the Act was passed in 1934. Today there are means available to listen in on telephone calls without the use of an actual tap or physical contact with the lines of transmission. To hold that these modern methods are without the scope of the statute means that the law is a dead letter. The spirit of the Act requires the exclusion of this evidence. Indeed, in the second Nardone case the Supreme Court warned against corroding interpretations of the statute when it said: "That decision [the first Nardone case] was not the product of a merely meticulous reading of technical language. It was the translation into practicality of broad considerations of morality and public well-being. This Court found that the logically relevant proof which Congress had outlawed, it outlawed because 'inconsistent with ethical standards and destructive of personal liberty.' * * * A decent respect for the policy of Congress must save us from imputing to it a self-defeating, if not disingenuous purpose."[11]

The majesty of the law demands that constitutional guarantees and statutory rights be fully enforced even though at times it may result in one charged with crime escaping just conviction. The history of freedom has been the history of respect for and enforcement of due process of law. Our judgments must not be warped by the fact that the defendant is charged with an offense which involves a sordid and shabby business. It is well to recall that "the safeguards of liberty have frequently been forged in controversies involving not very nice people." [12]

---

11. Nardone v. United States, 308 U.S. 338, 340–341, 60 S.Ct. 266, 267, 84 L.Ed. 307.

12. Frankfurter, J., dissenting in United States v. Rabinowitz, 339 U.S. 56, 69, 70 S.Ct. 430, 94 L.Ed. 653.