**UNITED STATES of America**

v.

**Leroy F. BARBOUR.**

**Cr. No. 471–58.**

United States District Court
District of Columbia.

July 14, 1958.

Oliver Gasch, U. S. Atty., and Joseph M. Hannon, Asst. U. S. Atty., Washington, D. C., for the United States.

Jean F. Dwyer, Washington, D. C., for defendant.

TAMM, District Judge.

The defendant has filed a motion to suppress evidence, namely, ten capsules of alleged heroin mentioned in counts one and two of the indictment, and one hundred capsules mentioned in counts three and four of the same indictment.

The grounds upon which he relies in support of this motion to suppress the ten capsules are that they "were seized from the house where he was living under color of a search warrant that was improperly issued, in that it is tainted with wiretapping and the affidavit is insufficient to justify its issuance." The grounds upon which he bases his motion as to a suppression of the one hundred capsules are, "that they were seized from his person without a warrant of any kind, at a time when he was committing no crime, and not in the course of a valid arrest." As these two points will be treated differently, each will be discussed separately.

The facts are as follows: a police officer had a special employee of the narcotics squad place a call to AD 2–4459, and the former listened to the conversation by means of a telephone extension between the special employee and one, "Sonny", wherein arrangements were made for a purchase of narcotics. During the conversing, Sonny told the special employee that narcotics were presently on the premises, 62–P St., N.W., and that "Leroy" was there and "had his bag." The special employee, under the surveillance of the police, then proceeded to the above address and purchased heroin. The police officers acting upon this information then secured a search warrant for the entire premises 62–P St., N.W. and proceeded to these premises. Upon their arrival, they knocked at the door but receiving no response they broke in. Once inside, they observed a number of people, narcotics paraphernalia such as syringes and needles, and the ten capsules of heroin. Shortly thereafter, Leroy F. Barbour, the defendant named herein, entered, and was carrying a bag of groceries. The police informed him who they were and of their purpose and authority. Thereupon, Barbour dropped the bag and reached into one of his pockets and began to remove an envelope. Seeing this, the police seized him and secured him after some scuffling and grappling. They then searched Barbour

after arresting him, and found the one hundred capsules.

The first point to be treated deals with the seizure of the ten capsules. The main contention of the defendant is that the information that the police originally obtained which served as a basis for the search warrant was secured as the result of illegal wiretapping in that the police officer, by listening in on the conversation between the special employee and Sonny, was violating T. 47 U.S.C.A. § 605. The defendant relies mainly upon the case of United States v. Stephenson, D.C.D.C., 121 F.Supp. 274. The defendant in that case was charged with having committed perjury before the House of Representatives Subcommittee on Defense Activities. One of the false statements attributed to him was his claim that he had never talked to a Mr. Parsons from the Century Company. Parsons, who was not a Government agent, previously had a recording device attached to his telephone which would record all conversations made on the telephone. Parsons turned over a recording of a conversation between Stephenson and himself to the United States Attorney's office. Stephenson, at the time of the telephone conversation, knew nothing of this recording device, nor was he warned about it in any manner. He filed a motion to suppress the recording.

The pertinent portion of T. 47 U.S.C.A. § 605 involved was this: "* * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."

Judge David Pine in the Stephenson case held that Parsons, although a party to the call, was included in the terms of the statute for it specifically states, "no person". He also held that Parson's acts constituted an interception within the meaning of the statute: "Both in space and time, the taking in this instance was before the arrival of the communications at the destined place." 121 F.Supp. at page 277. He further held that the playing back of the record in Court would constitute a divulgence, and in determining who is a "sender" under the statute he held that each party is alternately a sender and a receiver. He went further and said that the privilege granted by the statute would be invalid if the party originating the call had the power to surrender the other's privilege—the privilege is mutual and both must consent to the interception of any part of the talk. He concluded that Parson's acts were in violation of Sec. 605 and granted the motion to suppress the recording.

One question that must be answered preliminarily is what constitutes an unauthorized interception within the meaning of Section 605. There is no uniformity on this point but rather, as Chief Justice Warren stated in the case of Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 162, 2 L.Ed.2d 134, "The federal courts have split in their determination of this question." As seen in the Stephenson case, Judge Pine held that the recording of the conversation constituted an unauthorized interception within the meaning of the statute. However, in the case of Flanders v. United States, 6 Cir., 222 F.2d 163, there is a factual situation related to the present one. Merritt, in Nashville, upon the urging by agents of the Bureau of Narcotics, called the defendant who was in New York and asked him to bring some heroin to Nashville where it could be sold for a good price. While Merritt talked to the defendant, the agents with the consent and knowledge of Merritt listened to this conversation on extension telephones. Subsequently, the defendant was arrested, tried, found guilty by a jury and sentenced. He then appealed. The only question before the court on appeal was: did the District Court err in refusing to grant appellant's motion to suppress the evidence secured in the telephone conversation on the ground that it constituted an interception of a telephone communication in violation of T. 47 U.S.C.A. § 605?

The Court, through Circuit Judge McAllister, traced the history of the treatment which this question had received citing United States v. Yee Ping Jong, D.C.Pa., 26 F.Supp. 69; United States v. Polakoff, 2 Cir., 112 F.2d 888, 134 A.L.R. 607; Goldman v. U. S., 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322; Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691.

In the case of Goldman v. U. S., supra [316 U.S. 129, 62 S.Ct. 995], the Supreme Court treated the word "intercept" as follows:

"As has rightly been held, this word indicates the taking or seizure by the way or before arrival at the destined place. It does not ordinarily connote the obtaining of what is to be sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the moment, it comes into the possession of the intended receiver." 222 F.2d at page 166, Flanders v. United States, supra.

Treated also in Judge McAllister's opinion are the three cases wherein this question arose before the United States District Court for the District of Columbia:

"In United States v. Lewis, D.C., 87 F.Supp. 970, and in United States v. Sullivan, D.C., 116 F.Supp. 480, Judge Holtzoff held that where the telephone conversation was listened to by a third person, with the consent of one of the parties, there was no interception within the intendment of the statute. In United States v. Stephenson, D.C., 121 F. Supp. 274, Judge Pine held, contrary that the recording of a telephone conversation by one of the parties was a violation of the statute, and that the evidence obtained thereby should be suppressed."

Judge McAllister, in affirming the judgment of the District Court, held:

"We are of the opinion that where, by means of an extension phone, or other device, a third party 'listens in' on a telephone conversation with the consent of one of the parties to the conversation, there is no interception of the communication, within the meaning of the statute. With respect for the high authorities that hold a contrary opinion, we are persuaded by the reasoning of those that adopt this view, and consider that the route we follow was pointed out by the Supreme Court in Goldman v. U. S." 222 F.2d at page 167.

Returning to the case of United States v. Stephenson, supra, it is seen that Judge Pine in that case adopted the meaning of "intercept" as that set forth by Judge Learned Hand in the case of United States v. Polakoff, 2 Cir., 1940, 112 F.2d 888, 134 A.L.R. 607, wherein it was held that " * * * anyone intercepts a message to whose intervention as a listener the communicants do not consent; the means he employs can have no importance; it is the breach of privacy that counts." 112 F.2d at page 889. He thus concludes that the holding in the case of Goldman v. United States, supra, has not overruled the opinion in United States v. Polakoff, supra. Thus, there is—as pointed out by the Supreme Court in Rathbun v. United States, supra—a clear conflict as to what constitutes an unauthorized interception within the meaning of Section 605.

The case of United States v. Pierce, D.C., 124 F.Supp. 264, affirmed at 6 Cir., 224 F.2d 281 on basis of trial Court's opinion and upon the authority of Goldman v. United States, supra, Flanders v. United States, supra, and Browner v. United States, 6 Cir., 215 F.2d 753, is another illustration of the situation where police officers listened in by extension telephones to a call placed by one person to the defendant. They did this with the consent of the initiator of the long distance telephone call, in fact, the caller, "expressed his willingness to call Jesse by 'phone and order heroin and permit the police officers to listen to the conversation between them." 124 F.

Supp. at page 265. The Court held that Section 605 was not violated.

In the recent Supreme Court case, Rathbun v. United States, supra, the sole question present was: Is the listening in of third parties on an extension telephone in an adjoining room without the consent of the sender an interception of a telephone message and the divulgence of the contents of such conversation prohibited by statute?

The factual situation there was this: the petitioner, in New York, talked to Sparks, in Colorado, and threatened the latter's life in order to get a stock certificate that Sparks held as collateral for a loan. Expecting another call, Sparks called in Pueblo policemen to overhear the conversation by means of an extension telephone already in use in Sparks' home. This the police did, and at the trial they testified that Sparks' life had been threatened.

The Court, in holding that Title 47 U.S.C.A. § 605 was not violated because there was no interception as Congress intended that word to be used, made the following observations: that the telephone extension is a much used instrument both at home and in the office and that it was not the intent of Congress to place a restriction on the subscriber's use of it which would deny him the right to allow one to use it. It seems clear that one who is "entitled to receive the communication may use it for his own benefit or have another use it for him. The communication itself is not privileged, an one party may not force the other to secrecy merely by using a telephone." [355 U.S. 107, 78 S.Ct. 163.]

The Court continued:

"The conduct of the party would differ in no way if instead of repeating the message he held out his hand set so that another could hear out of it. We see no distinction between that sort of action and permitting an outsider to use an extension telephone for the same purpose. * * *

"Common experience tells us that a call to a particular telephone number ber may cause the bell to ring in more than one ordinarily used instrument. *Each* party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation. When such takes place there has been no violation of any privacy of which the parties may complain. Consequently, one element of Section 605, interception, has not occurred." (Emphasis supplied.)

■ Upon the basis of the cases of Goldman v. United States, supra, and Rathbun v. United States, supra, this Court denies the motion of the defendant to suppress as evidence the ten capsules, for the information obtained by the police in the manner previously stated did not constitute a violation of Title 47 U.S.C.A. § 605.

■ This leads to the second point, namely, the seizure of the one hundred capsules after the arrest of the defendant which arrest, the defendant claims, was not valid. The question resolves itself into this: did probable cause exist for the arrest of the defendant in the aforementioned manner? (There is no dispute that if the arrest was valid, the search incidental to the arrest was also valid.)

First, it is necessary to reiterate the factual situation. The defendant entered the room carrying a bag or bags. The premises were those of the defendant. The police duly informed the defendant of their purpose and authority. Thereupon, the defendant dropped what he was carrying and reached into his pocket and attempted to pull out an envelope. At this point, the police grabbed him, secured him and placed him under arrest.

In the light of these circumstances, it seems only reasonable to assume that the defendant's action was for one purpose, that is, that he was attempting to rid himself of, or destroy, something which he did not want the police officers to find.

Having seen the events that took place, they must now be considered in the light of the setting, or background. The police, from their own observation, could see that the premises contained narcotics plus standard equipment used by narcotic users. The defendant, who lives on these premises, upon learning of the purpose and reason for the presence of the police, immediately drops what he is carrying and pulls an envelope from his pocket. Also, the premises were being utilized for the purpose of narcotic users. Based on all of the foregoing, this Court is of the opinion that the police had probable cause to believe that the defendant had narcotics in his possession unlawfully and was thus violating Title 26 U.S.C. § 4704(a).

As Judge Prettyman wrote in the case of Bell v. United States, 2 Cir., 254 F.2d 82, 85, "The Supreme Court in Mallory [Mallory v. U. S., 354 U.S. 449 at 454, 77 S.Ct. 1356, 1 L.Ed.2d 1479] supra, said, 'The police may not arrest upon mere suspicion'. (Emphasis ours.) But suspicion on reasonable grounds is not mere suspicion." At this point, the setting, together with the action of the defendant, must again be examined and applied to the above. Judge Prettyman, continuing, says:

"The problem faced by the officer is one of probabilities—not certainties and not necessarily eventual truth. As we have quoted Mr. Justice Rutledge, 'In dealing with probable cause, however, as the very name implies, we deal with probabilities.' And the Justice went on to write that room must be allowed for some mistakes, so long as the mistakes are 'those of reasonable men, acting on facts leading sensibly to their conclusions of probability.'"

This Court concludes that probable cause existed for the police to arrest the defendant at the point said arrest occurred and that the arrest is valid. Since a valid arrest took place, the search of the defendant that followed is incidental to a valid arrest and, therefore, valid.