Eugene RAYSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15021.

United States Court of Appeals
Ninth Circuit.

Oct. 29, 1956.

William H. Neblett, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, Robert John Jensen, Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and POPE and HAMLEY, Circuit Judges.

DENMAN, Chief Judge.

Rayson appeals from a judgment of the district court, sitting without a jury, finding him guilty on two counts of an indictment charging him with (1) receiving, concealing and transporting and facilitating the concealing and transporting of heroin, and (2) selling it and facilitating its sale both in violation of Section 174, Title 21 U.S.C.A. and sentencing him to three years' imprisonment on each count, the sentences to run concurrently.

Appellant contends (a) that the court erred in admitting one Fletcher's statements of what appellant said to him when he telephoned Fletcher, because the conversations were recorded on a recording device, though the recordings were not offered in evidence, and (b) that, assuming the telephone conversations were admissible, the evidence is insufficient to support either count on which he was convicted.

The government's principal witness was one Fletcher, an informer who had been twice convicted of narcotics violations and who was thereafter arrested on a narcotics charge in Los Angeles but was not tried. Apparently he agreed to assist the government in the apprehension of narcotics sellers.

Fletcher testified that he contacted one Kelley (a defendant in this case who was acquitted) on instructions from the police, and Kelley agreed to have appellant telephone Fletcher at a telephone number which was that of the residence of one of the police officers.

A voice, which Fletcher recognized as appellant's, thereafter called Fletcher at that number and in a conversation which was overhead by the officer who testified, Fletcher told appellant he wished to purchase heroin and a meeting was arranged. The telephone call was also recorded on a tape by means of a device attached to the telephone in the police officer's house, but the recordings made of this and other calls were not introduced into evidence. A police officer testified that he overheard this and other telephone conversations by listening to the receiver while held by Fletcher.

At the meeting between Fletcher and appellant in Fletcher's car, in sight but out of hearing of the police, Fletcher told appellant he wished to buy heroin, and appellant, so Fletcher testified, told him to return to the number where he (appellant) had first called and contact him later.

Thereafter Fletcher testified that appellant telephoned again and they arranged a meeting which followed and at which Fletcher paid appellant $700 for heroin, the delivery of which to Fletcher would be as arranged by telephone later that day.

Fletcher testified that later, at 6:30 p. m., appellant again telephoned him and told him that he would find a package near a railroad sign at a certain intersection in Los Angeles. Later one of the officers to await the telephone call from appellant told him it would be, and a chemist testified that it contained heroin.

Appellant denied making any of the telephone calls above referred to and denied meeting Fletcher at the times and places testified to by Fletcher, although police officers who followed both parties corroborated Fletcher's testimony as to the fact that the meetings occurred.

Appellant testified that he met Fletcher at 4 p. m. on the day in question and that Fletcher then repaid to appellant $50 which he had borrowed previously from appellant. The testimony was controverted by officers who testified that they excused Fletcher at 3 p. m. and followed him to his house and waited outside until approximately 5 p. m. when Fletcher came out. They further testified that when Fletcher came out they spoke to him and permitted him to go to visit his girl for an hour. It was arranged that Fletcher would rejoin the officers at 6 p. m. at the house of one of the officers to await the telephone call from appellant giving the location of the heroin.

Appellant contends that since the officers did not search Fletcher after he returned from the meeting at which Fletcher stated he gave appellant $700, that in fact Fletcher kept the money and procured the narcotics elsewhere which he subsequently planted near the railroad sign. No evidence is offered in support of this theory, which is inconsistent not only with Fletcher's testimony but with what the officers heard by listening to the telephone calls between appellant and Fletcher.

The evidence appears sufficient to support the conclusion that appellant did telephone Fletcher, since Fletcher's testimony is corroborated by the officer who listened in, and since appellant apparently met Fletcher (where officers saw them together) pursuant to appointments which the officers and Fletcher say were made on the telephone. It appears that appellant lied in denying making the calls. Fletcher testified that he paid appellant $700, which the officers had given him for the purpose; Fletcher and the officers testified that appellant on the telephone told Fletcher where the heroin would be found; a police officer found the drug where Fletcher and the officer said appellant told them on the telephone it would be.

Section 174 of 21 U.S.C.A. on which the charges of the indictment depended, so far as pertinent, reads:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law * * * shall be * * * imprisoned * * *."

■ We think the evidence clearly supports the charges of facilitation of the concealment and transportation and sale of the heroin. The court evidently believed that appellant received the $700 consideration for obtaining the heroin for Fletcher and that he facilitated its transportation to and concealment in the place where the appellant stated it could be found, and its sale there to the government official, who was Fletcher's principal in the transaction.

■ Appellant contends that because a recording device was attached to the telephone receiver without the knowledge of the sender of the messages, but with the knowledge and consent of the receiver, the receiver could not testify as to what he heard. The pertinent portion of Section 605 of the Communications Act of 1934, 47 U.S.C.A. § 605, reads:

"* * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * * *."

Assuming that attaching such a device into the receiver's telephone with his knowledge and consent violates Section 605, Cf. Contra People v. Malotte, Cal. 1956, 292 P.2d 517, here it was damnum absque injuria because there was no testimony introduced at the trial as to what the recording device contained.

■ It was not interception within the meaning of the statute for another person to listen to what is said through

a receiver in the hand of the person to whom the sender is talking. The conversation is completed when heard and not intercepted before it reaches the person to whom it is addressed. United States v. Pierce, D.C.N.D.Ohio 1954, 124 F. Supp. 264, affirmed per curiam in Pierce v. United States, 6 Cir., 1955, 224 F.2d 281; United States v. Bookie, 7 Cir., 1955, 229 F.2d 130, 192; Flanders v. United States, 6 Cir., 1955, 222 F.2d 163. Cf. Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322.

The judgment is affirmed.