Ralph B. CARNES and Roger W. Smallwood, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18421.

United States Court of Appeals
Fifth Circuit.

Oct. 20, 1961.

Rehearing Denied Jan. 11, 1962.

---

23. Stallo dealt with former Equity Rule 50, 226 U.S. 662.

Robert E. Andrews, Everett C. Brannon, Jr., and Frank B. Stow, Gainesville, Ga., for appellants.

Charles D. Read, Jr., U. S. Atty., John W. Stokes, Jr., Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This is an eavesdropping case, a problem that keeps bobbing up before the federal courts. Is evidence obtained by recording or by listening to a telephone conversation with the consent of one party, but without the knowledge or consent of the other, legally admissible evidence under Section 605 of the Federal Communications Act? The appellants seek reversal of criminal convictions based in part upon taped recordings of telephone conversations, asserting that stripped of this inadmissible evidence the judgment lacks substantial support. We hold that the evidence was properly admitted.

The appellants, Ralph B. Carnes and Roger W. Smallwood, with seven others, were indicted for violations of the United States Internal Revenue liquor laws during the fall of 1958.[1] The indictments followed a long period of investigation by state and federal officers. September 10, 1958, the officers raided a large unregistered still located adjacent to property owned by Smallwood. They discovered 403 gallons of nontaxpaid liquor and rounded up several persons implicated in the operation of the still. Destruction of

the still merely slowed down operations. September 20 Atlanta policemen found John S. Whitley, one of the defendants previously arrested, driving an automobile containing 158 gallons of non-taxpaid whiskey. During this period numerous telephone calls were made between a store owned by Carnes and the Smallwood residence. In October Wurtele, a federal investigator, initiated an underground contact with the defendants in an attempt to purchase whiskey from Carnes. October 7 Wurtele met Carnes and arranged a purchase at three dollars a gallon. During the next few days the investigator made several purchases of whiskey from various members of the group later indicted. On one occasion he recorded a conversation with Whitley by means of a pocket tape recorder. October 27 and 29, Wurtele recorded two telephone conversations he had with Carnes by means of an attachment placed on the earpiece of his telephone. October 30, other officers, using information obtained through Wurtele's conversation with Carnes, located and destroyed a second still. A third still was seized November 26. These prosecutions were then initiated.

The recorded conversations were introduced at the trial over objections from the defendants. It is not disputed that the evidence was sufficient to support the decision, if the recorded conversations were properly admissible.

The Federal Communications Act of 1934, in part, provides that:

"* * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * * * and no person having received such intercepted

1. Count One charged a conspiracy running from August 1, 1958, until November 30, 1958. Four other counts charged certain defendants with substantive offenses committed during the period of the conspiracy. Carnes was convicted on the conspiracy count. Smallwood was con-

victed of the conspiracy and on Counts Two and Four, which charged the possession of non-taxpaid whiskey and a nonregistered distillery, respectively, on September 10, 1958. Carnes received a sentence of four years and Smallwood three years.

communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto * * *." 47 U.S.C.A. § 605.

The Supreme Court has held that evidence obtained in violation of this law is not properly admissible in court proceedings. Nardone v. United States, 1937, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314; Weiss v. United States, 1939, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298.

Shortly after these cases were decided, a division of opinion developed in lower courts in interpreting the scope of activities prohibited by the statute. The dispute centered on whether the words, *"intercept any communication"*, apply when one party to a conversation, without the knowledge of the other, allows a third person to listen to the conversation or record it by a device attached at or near the consenting party's end of the telephone line. In a 1940 case the Second Circuit, in an opinion by Judge Learned Hand, held that a recording made from an extension phone fell within the statutory ban and was inadmissible. The court said:

"The statute does not speak of physical interruptions of the circuit, or of 'taps'; it speaks of 'interceptions' and anyone intercepts a message to whose intervention as a listener the communicants do not consent; the means he employs can have no importance; it is the breach of privacy that counts. We need not say that a man may never make a record of what he hears on the telephone by having someone else listen at an extension, or, as in the case at bar, even by allowing him to interpose a recording machine. The receiver may certainly himself broadcast the message as he pleases, and the sender will often give consent, express or implied, to the interposition of a listener. Party lines are a good illustration; and it would be unwise to try in advance to mark the borders of such implications. Here, however, we need not be troubled by niceties, because, no matter what the scope of any such implied consent, it cannot extend to the intervention of prosecuting agents bent upon trapping the 'sender' criminally." United States v. Polakoff, 2 Cir., 1940, 112 F.2d 888, 889, 134 A.L.R. 607.

Under this view "each party to a conversation is a sender as well as a receiver whose consent to interception is required before a communication may be divulged." United States v. Hill, D.C.S.D. N.Y.1957, 149 F.Supp. 83, 84.

Courts taking the opposite approach reasoned that "intercept" required the listening to occur *between* the parties to the conversation, a condition not satisfied when a recording is made at the site of one party and with his consent. Thus, in United States v. Yee Ping Jong, D.C. W.D.Penn.1939, 26 F.Supp. 69, 70, the court admitted a phonographic recording made by attachment of a device to the telephone wire inside the house of a narcotic agent's associate from which a telephone call was made. The conversation "between his interpreter and the defendant", the court said, "was not obtained' by a 'tapping of the wire' between the locality of call and the locality of answer by an unauthorized person, but was, in, effect, a mere recording of the conversation * * * made by a participant."

The Supreme Court gave this interpretation a boost in Goldman v. United States, 1940, 316 U.S. 129, 62 S.Ct. 993, 995, 86 L.Ed. 1322. Federal agents, to overhear a conversation in a business office, gained access to an adjoining room and inserted a detectaphone in a small aperture in the partition wall with a wire leading from the detectaphone to earphones. The Court held Section 605 in-

applicable, because no interception at all had occurred; the officers had overheard the speaker directly. In discussing the Communications Act the Court stated: "The protection intended and afforded by the statute is of the means of communication and not of the secrecy of the conversation. * * * What is protected is the message itself throughout the course of its transmission by the instrumentality or agency of transmission. * * * As has rightly been held, [citing United States v. Yee Ping Jong] this word ["intercept"] indicates the taking or seizure by the way or before arrival at the destined place. It does not ordinarily connote the obtaining of what is to be sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the moment, it comes into the possession of the intended receiver."

The Second Circuit has held that the language in Goldman did not call for reversal of its earlier decision; it continued to exclude all testimony as to telephone conversations listened to without consent of the speaker. Reitmeister v. Reitmeister, 2 Cir., 1947, 162 F.2d 691; United States v. Hill, D.C.S.D.N.Y.1957, 149 F.Supp. 83. Most courts, however, follow Yee Ping Jong and Goldman and adopt the narrower interpretation of Section 605. See, for example: Ladrey v. Commission on License to Practice, etc., 1958, 104 U.S.App.D.C. 239, 261 F.2d 68 (en banc), certiorari denied 358 U.S. 920; (listening on an extension line); United States v. Bookie, 7 Cir., 1956, 229 F.2d 130 (officers standing near receiver to hear conversation); United States v. White, 7 Cir., 1956, 228 F.2d 832 (extension); Flanders v. United States, 6 Cir., 1955, 222 F.2d 163 (extension); United States v. Barbour, D.C. 1958, 164 F.Supp. 893, affirmed p. c., 1959, 105 U.S.App.D.C. 89, 264 F.2d 375, certiorari denied 360 U.S. 905; (extension); United States v. Pierce, D.C.N.D. Ohio 1954, 124 F.Supp. 264, affirmed p. c., 6 Cir., 1955, 224 F.2d 281 (extension); United States v. Sullivan, D.C. 1953, 116 F.Supp. 480, but see opinion affirming on other grounds, 1955, 95 U.S.App.D.C. 78, 219 F.2d 760 (listening near the receiver); United States v. Lewis, D.C.1950, 87 F.Supp. 970 (recording made by device attached to telephone and, on separate calls, stenographic records made by person listening over extension phone). See also Rayson v. United States, 9 Cir., 1956, 238 F.2d 160. But see United States v. Stephenson, D.C.1954, 121 F.Supp. 274 (conversation recorded by device attached to wiring of telephone bell box was held inadmissible) in which the court stated, "Both in space and time, the taking in this instance was before the arrival of the communications at the destined place." 121 F.Supp. at page 277.

The Supreme Court, in Rathbun v. United States, 1957, 355 U.S. 107, 78 S. Ct. 161, 2 L.Ed.2d 134, stamped its approval on the conclusion supported by this increasing weight of authority. Police officers were allowed to listen on an extension line to a telephone conversation in which the defendant threatened the life of the man he had called. In holding the testimony admissible, the Supreme Court scotched the theory that the consent of each party to a conversation must be obtained before a communication may be divulged. The Court held:

"The clear inference is that one entitled to receive the communication may use it for his own benefit or have another use it for him. The communication itself is not privileged, and one party may not force the other to secrecy merely by using a telephone. It has been conceded by those who believe the conduct here violates Section 605 that either party may record the conversation and publish it. The conduct of the party would differ in no way if instead of repeating the message he held out his handset so that another could hear out of it. We see no distinction between that sort of action and permitting an outsider to use an extension telephone for the same purpose." 355 U.S. at page 110–111, 78 S.Ct. at page 163.

Two major principles may be extracted from these cases. First, testimony as to a telephone conversation listened to with the consent of only one of the parties to the conversation is not inadmissible under Section 605. Second, such testimony does not become inadmissible simply because it was recorded by an electrical or mechanical device attached to an extension phone or telephone wiring at the locality of the consenting party. The significant fact in the cases where eavesdropping has been approved is that a third person is listening to a conversation directly, or indirectly through an electrical device, with the consent, and often assistance, of one of the parties, and that the other party does not know that his words are overheard. Both the consenting party and the third party would be free to divulge the contents of the conversation in the courtroom or elsewhere; the only function served by the recording is to preserve a permanent and accurate record of the conversation. In the case at bar this point is particularly clear since the recording was made by the very individual who was participating in the conversation. Taking a sensible view of it, the only difference between a person testifying to a conversation which he participated in or overheard and a recording of the conversation is that the recording has the advantage of furnishing trustworthy evidence (assuming a showing that the tape has not been tampered with).

The Supreme Court has now added a caveat to the Goldman principle of protected eavesdropping. Silverman v. United States, 1961, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734. In that case police officers inserted a "spike mike"[2] through a party wall so that it came in contact with a heating duct, converting the heating system into a giant microphone runing the entire house. The Court distinguished Goldman on the ground that in Goldman there was no physical invasion of a constitutionally protected area and

therefore no violation of the Fourth Amendment. At the same time, the Court's parthian shot was to declare, "we decline to go beyond [Goldman] by even a fraction of an inch". The Court held that eavesdropping accomplished by such "a physical intrusion" as a "spike mike" into a "constitutionally protected area" is "beyond the pale of even those decisions in which a closely divided Court has held that eavesdropping accomplished by other electronic means did not amount to an invasion of Fourth Amendment rights". The Supreme Court agreed with the Court of Appeals, however, that Section 605 was inapplicable in that it could not be said that the police officers "intercepted" the telephone conversations. In the instant case the appellant does not rely on the Fourth Amendment; the facts show no physical intrusion into a constitutionally protected area and less invasion of privacy than there was in Goldman.

The Communications Act goes a long way toward safeguarding individual liberty, the right of privacy, and the insulation of one's home from Big Brother intrusions of a police state. We must foresee and guard against the increasing danger to these rights as the electronics industry continues its development. But the admissibility of conversations recorded with the consent of a party to the conversation is not such an invasion of privacy that its disadvantages should outweigh its value as evidence in the search for truth in a criminal trial. As the Court in Rathbun stated, "Each party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation." 355 U.S. at page 111. This risk does not catch people by surprise. It does not substantially increase the risk to allow the conversation to be recorded or to allow others to listen. The limitation drawn by Section 605 on the actions it prohibits is meaningful.

2. A "spike mike" is an electronic listening device consisting of a microphone attached to a foot-long spike, with an amplifier, a power pack, and earphones.

The statutory language, the authority of the Supreme Court, and sound public policy all support the decision of the court below. It is hereby

Affirmed.